ALFREDA ZONORA, ALIAS AMELIA TORRES, v. THE STATE.

No. 14836. Delivered June 24, 1932.
Reported in 51 S. W. (2d) 724.

The opinion states the case.

*Charles J. Lieck* and *Wm. E. Calvert,* both of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—Theft of cattle is the offense; penalty assessed at confinement in the penitentiary for two years.

Rodriguez, a youth 19 years of age and under indictment for the offense, testified for the state. His testimony was, in substance, as follows: He went at night to the home of the appellant, and there found Hilario Botello. They drank beer at the house, after which the witness Rodriguez, Botello, and the appellant went in the latter's Ford car to a point about eight miles in the country. Rodriguez and Botello got out of the car and took a spotted calf, which they pulled through the wire of a fence and later killed. At the time the calf was taken, the appellant was about a half block away in her car. The calf was put in the car by Rodriguez and Botello and they went in the car to the appellant's house. Rodriguez left there while Botello remained. The witness did not know what the appellant did with the calf. Before leaving the appellant's house in the beginning, the appellant said they would go out and drink whisky. The witness also said that he saw the calf butchered and was told by the appellant not to tell about it. He said his life was threatened by the appellant in case he did tell about it. He did not know whether the calf was a bull or heifer. The witness said that he and Botello did not know where they were going at the time they got in the car. Rodriguez said that Botello was 24 years of age. The witness did not remember the day, the week, the month, or the time of the month when the offense took place. The witness disclaimed borrowing the car. He admitted that he was giving his testimony in the hope of leniency. He had been told that if he would make a confession he would be saved. Botello had been convicted of the offense at the time of the appellant's trial.

Acord, the owner of the calf, testified that it was lost; that he had observed where the calf had been dragged under the fence. The calf had white hair and brown hair. Acord said that he found some white hair and brown hair in the garage at the home of the appellant. He also found some meat there.

The police officer who arrested Botello and Rodriguez testified that he took their confession; that they showed him the place where the calf

was taken under the fence. They also showed him to the home of the appellant. They found blood and hair in the garage of the appellant. The calf was brick red and mixed with white. The blood was on the Ford automobile, both inside and outside of the car. In the kitchen they found some pieces of meat which looked like liver. At that time the appellant was in jail.

Swift, a city detective, went to the home of the appellant and found a platter on the edge of the stove with a big chunk of meat in it, which looked like it might have been calf meat. He said: "It was not goat meat. It was beef, and it looked like it might have been off the back— a kind of loin roast." The witness said they went into a double garage, and in one side of the garage there was a calf leg, with no skin on it. It was just a small hock and the bones and the leg. There was a car in the garage with blood on the back of it.

Harvey, another officer, testified, in substance, as did Swift, except that he said there was a fresh sheep hide and a vessel with about half a teacup of blood sitting in the garage. He could not say what meat he saw. He could only say it was fresh meat. He noticed no blood on the automobile, but the car was very muddy.

The appellant testifield, in substance, as follows: She knew both Rodriguez and Botello by sight. She had known them for some time. On the night of the 14th day of February, 1931, she loaned her car to Hilario Botello. He had borrowed the car on other occasions. He returned that night about twelve o'clock, but did not come into the house. She denied the truth of the testimony given by Rodriguez and claimed that she was not with them at the time the calf was stolen. The blood at her house was from a goat that she had barbecued for a party which she gave. On cross-examination, she was asked if it were not a fact that Botello, Rodriguez, and the witness had stolen a goat at the Apache Packing Company and had taken the goat to a tree at her house and killed it, and later took the goat to her house on Sonora Street. She said that she was under indictment with Botello and Rodriguez for attempting to burglarize Clarence Saunders Store, but that she did not do it. She admitted her acquaintance with Rodriguez and Botello. She said that she did not know where they lived. She did not see any blood on the back of the car. She said that the meat in the kitchen had been bought from the Apache Packing Company.

From bill of exception No. 4 it appears that the state was permitted to prove, over the objection of the appellant, that Rodriguez and Botello had made confession of their participation in the theft, and that the appellant would not confess. It was shown that she was in jail at the time. The point is made that her silence while in jail was not usable against her. We think the matter shows error, but not of a harmful nature, for the reason that the record otherwise shows that Rodriguez

and Botello had made confessions and the appellant, in her own behalf, testified denying the offense.

From bill of exception No. 5 it appears that, while testifying as a witness, the appellant gave evidence explanatory of her possession of a goat hide which had been introduced by the state as a circumstance against her. She was asked on cross-examination the following question: "As a matter of fact, you and Hilario and Jose stole that goat out of the Apache Pacing Company, didn't you?" She answered, "No, sir." However, the inquiry should not have been made. She should not have been required to answer it. It had the effect, by innuendo, of accusing her of an extraneous offense. So far as apparent from the record, it was relevant upon no issue in the case. It was not followed up by the state, and there is no indication that there was possessed by the state any knowledge as a basis for making the inquiry.

A similar matter to that last mentioned is brought forward in bill of exception No. 6, in which the appellant was asked if it was not a fact that she took the goat over to a creek by her house and killed it. She was required to answer the question, which she answered in the negative.

In bill No. 7 it appears that the appellant, over her objection, was required to answer the following question: "As a matter of fact you and Hilario and Jose stole that goat out of the Apache Packing Company, didn't you? You took the goat over to the creek by your house and killed it?"

The remarks made with reference to bill No. 4 are applicable to the present bill.

From bill No. 8 it appears that the appellant, while testifying as a witness, was asked the following question: "You were convicted in the United States District Court?" The request to strike out the question was overruled. Exception to the inquiry was taken, and also to the action of the court in refusing to exclude it. It should have been excluded.

A transaction similar to that last mentioned seems to have been repeated by bill No. 9. The question was repeated, as shown by the bill, and state's counsel, going further to ask: "You were convicted on April 3, 1928, in cause No. 7129, for the sale of intoxicating liquor in the Federal Court, weren't you?"

Nothing in the case has been perceived which would justify the inquiry unless it would be to discredit the appellant as a witness. It is not shown that the transaction was a felony, nor that it was available to the state for the purpose of impeachment.

The matter was again brought forward in bill No. 10, in which the court excluded the testimony. It appears that the appellant had not been convicted of any felony. It was not a felony or misdemeanor involving moral turpitude.

Appellant admitted on the stand that she was indicted for attempting to burglarize Clarence Saunders Store. She claimed that she was not guilty. In bill No. 11 it appears that counsel interrogated her with reference to facts tending to show her guilt of that offense. The following question was propounded to her: "Isn't it a fact that on that Sunday morning that you were arrested about two A.M., you were driving Hilario and Jose out to the Clarence Saunders Store at 4502 South Flores Street; isn't it a fact that about two o'clock on Sunday morning you were arrested." The relevancy of the question is not perceived. Its harmful effect seems not difficult to ascertain.

A proceeding similar to that discussed in bill No. 11 is reflected by bill No. 12. To the same general effect are bills Nos. 13, 14, and 15.

So far as we are able to perceive, the criminative evidence against the appellant comes from the accomplice Rodriguez. He being an accomplice, his testimony is not sufficient to support the conviction of the accused. See article 718, C. C. P., 1925. It is thought that there is no corroborative evidence such as will meet the demand of the statute which forbids the conviction of one upon the uncorroborated testimony of the accomplice. According to the accomplice, the calf was stolen some eight miles from the home of the appellant. The appellant denied her presence there, and no one but the accomplice Rodriguez affirmed that she was there. She claimed to have been at home at the time of the alleged offense and to have no knowledge of its commission. This was denied by no one save Rodriguez. There was evidence of blood on the car which belonged to the appellant. She said that she had loaned the car to Rodriguez and Botello. Her denial is not controverted by any one save Rodriguez. She had meat at her home which she said she had bought. This was denied by no one. The circumstance that she had meat at her home was accounted for by uncorroborated testimony. The identity of the meat rested upon the qualified opinion of the officers who saw it in her home. There was no effort to identify it, and no testimony sufficient to identify it as having come from the stolen calf. The presence of the hair to which the state referred is consistent with the appellant's theory that the car was used by the state's witness, and is not inconsistent with her theory that the calf was stolen while she was at her home. It is thought that according to the statute mentioned above, as construed by the numerous opinions of this court, that the conviction of the appellant was unauthorized because it rested upon the uncorroborated testimony of an accomplice.

On the facts, the recent case of Dewees v. State, 120 Texas Crim. Rep., 595, 47 S. W. (2d) 277, is quite similar, and the announcement there made is in accord with the conclusion here stated that the judgment must be reversed and the cause remanded. It is so ordered.

*Reversed and remanded.*