**Ralph Darrell GEORGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 46408.**

Court of Criminal Appeals of Texas.

July 11, 1973.

Rehearing Denied Sept. 7, 1973.

John P. Eaton, San Angelo, (on appeal only) for appellant.

Royal Hart, Dist. Atty., William J. Stroman, Asst. Dist. Atty., San Angelo, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

Appellant was convicted of the offense of robbery by firearms. Punishment was assessed at 15 years' confinement.

Three grounds of error are raised. The first concerns the alleged denial of a speedy trial. Appellant was indicted on June 8, 1970; on June 9, 1970, at an arraignment hearing, an attorney, William C. McDonald, was appointed to represent him. Counsel expressed a desire for a speedy trial and the court tentatively set the case for the following week. The case was not heard then and appellant was granted bail on July 2, 1970. The docket sheet reflects that on October 13, 1970, the case was continued because of appointed counsel's illness. Almost one year later (on September 16, 1971) appellant wrote the district attorney in San Angelo requesting a "quick and speedy trial." At this time, appel-

lant was incarcerated in the Federal Correctional Institution in Seagoville, Texas. Besides a speedy trial, appellant further requested that a court-appointed attorney be furnished him, as Mr. McDonald had died.[1] At the actual trial, when questioned about McDonald's death, appellant stated:

"My family told me. It hasn't been very long ago that my family told me about it. I don't know when he died. I was under the understanding the case had been dismissed; so I probably didn't pay any attention."

Eleven days after appellant's letter was written, the State applied for a writ of habeas corpus ad prosequendum, seeking to try appellant on the present charge "as soon as possible." The application was granted on September 24, 1971. Appellant was delivered to San Angelo on November 2, 1971; on November 8, 1971, a second attorney was appointed to represent him. The case was set for pretrial on December 14, 1971. On that date, defense counsel made a discovery motion; no denial of speedy trial was asserted. Defense counsel stated he had "some witnesses out of State." The cause went to trial on January 3, 1972, at which time a motion to dismiss was made, alleging the denial of a speedy trial. Such motion was not granted.

Appellant now alleges that, because of the 19 month lapse between indictment and trial, his cause should now be dismissed. See the recent U. S. Supreme Court decision in Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), wherein it was held that, though it was a harsh remedy, the only remedy available where there was a 6th Amendment violation of the right to speedy trial was to *dismiss* the charges against the accused.

■ Appellant cites Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We agree that the "balancing

---

1. The record does not reflect the date of McDonald's death.

test" to be applied is contained therein. The relevant considerations are: (1) the length of the delay, (2) the reason for the delay, (3) defendant's assertion of his right, and (4) the prejudice to the defendant.

## I

### Length of Delay

■■■ This time period is measured from the time the defendant became the "accused." United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The present case involves a total lapse of some 19 months. In our recent case of Harris v. State, 489 S.W.2d 303 (Tex.Cr.App.1973), it was concluded that a delay of 15 months was not so long as to demand a per se determination of a violation of the defendant's 6th Amendment right to a speedy trial. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke an inquiry is necessarily dependent upon the peculiar circumstances of the case. Barker v. Wingo, supra. The particular circumstances in the present cause necessitate a further examination.

## II

### Reason for the Delay

■■ Appellant does not allege, and the record does not reflect any deliberate effort by the State to delay the trial in this cause. As stated in Barker v. Wingo, supra, a more neutral reason such as negligence or overcrowded courts should be weighed less heavily, though the ultimate responsibility of such circumstances must rest with the State rather than the defendant.[2]

In the instant case, the initial reason for the delay was the illness of court-appointed counsel. That attorney subsequently died. Appellant's probation for a violation of the Federal Dyer Act was revoked and, though the record is unclear, it appears that appellant was incarcerated by federal authorities from September, 1970, until he was transferred to San Angelo for the present cause. This covers a period of some 14 months out of the 19 months of the "delay period." During this time, the appellant took no action to speed up the process until September of 1971, when he learned that a detainer had been placed on him by State authorities.

## III

### Assertion of His Rights

Appellant testified that he assumed the present charge had been dropped. When he finally did request a speedy trial, in late September of 1971, he was transferred to the local authorities in November and the trial began on January 3, 1972, some three months after his request.

## IV

### Prejudice to the Defendant

As stated in Barker v. Wingo, supra, we must here examine the following to determine possible prejudice to the defendant: (1) the prevention of oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired.

We find:

(1) Appellant was incarcerated by federal authorities for the vast majority of the 19 month period. Prior to his apprehen-

---

2. The State did have a missing witness in the instant cause, who was present at the scene of the crime. However, the State does not urge this as the reason for the delay in bringing appellant to trial. See Barker v. Wingo, supra, 92 S.Ct. at pg. 2192.

sion by federal authorities, he was apparently free on bail on the present charge.

(2) This second consideration is weighed against appellant since be believed the charge of robbery by firearms had been dismissed.

(3) Therefore, our main concern now becomes a determination as to whether or not appellant's defense was impaired by the delay. Appellant testified in his own behalf and raised a defense of alibi. He stated that, on the night in question, he was in the company of David Tate, Hazel and Richie Rivers, Jack Williams, and "Peggy."

Before we can find prejudice to appellant's defense, he must show that the witnesses were unavailable, that their testimony might be material and relevant to his case, and that he has exercised due diligence in his attempt to find them and produce them for trial. Harris v. State, supra. We will examine each of these five "alibi witnesses" individually:

(1) David Tate—Testimony related that at the time of the trial, Tate was serving in the United States Navy and was stationed in Viet Nam. His former wife testified that she believed he had been overseas since "about June or July of last year," which would indicate he left the States in the summer of 1971. Appellant's request for a speedy trial came after that, in September of 1971.

(Testimony relating to the whereabouts of the other four witnesses came from a defense witness, an investigator for an insurance agent who stated he was not licensed under Texas law to be a private investigator.)

(2) Hazel Rivers (or Reves)—The investigator testified that Mrs. Rivers was "somewhere in Colorado."

(3) Richie Rivers (or Reves)—The testimony was that he was "working for some construction crew in Texas, but that's all we can find there."

(4) "Peggy"—The investigator stated that he had no last name for this witness and had no idea about her whereabouts.

(5) Jack Williams—Williams, a San Angelo policeman at the time of the offense, was at trial time living in Brighton, Colorado. His address was known and the investigator testified that he talked with him. Though the investigator made no effort to testify as to the hearsay conversation with Williams, we note that defense counsel cautioned his own witness, "You can't testify from my questioning what he said, Bill."

In summary, we conclude that appellant failed to exercise due diligence in securing the alibi testimony he alleged was available for the following reasons: (1) At least one of the witnesses was still living in Texas. No effort to subpoena him is reflected. (2) The "investigator" was hired only one week before trial, though counsel had been appointed for some two months prior to trial. (3) No effort to obtain depositions from any of these witnesses is shown in the record nor is any such effort argued. (4) No motion for continuance was made in order to obtain any or all of these witnesses' testimony.

In final argument defense counsel stated:

"[The Prosecutor] might say 'why didn't [we] locate these witnesses sooner?' *I just didn't*." (Emphasis added)

Such a statement only convinces us more that the delay in bringing appellant to trial was not the *cause* of the witnesses' absence at the trial. Appellant sat silent for 15 months before seeking a speedy trial. He was tried less than four months later. Certainly it was an unfortunate set of circumstances which caused the initial delay—the death of court-appointed counsel. It would be ideal if our system of criminal

justice were so structured as to allow immediate detection and action when such occurrences take place. Though we certainly don't condone it, delay is not new to this Court. The lawyers of this State are aware of the tremendous backlog which ordinarily forces a lengthy wait before an appeal can be disposed of. Unfortunately, the last session of the Texas Legislature did not see fit to grant us the much needed relief we sought, in the form of some type of intermediate courts for criminal appeals.

As for the present cause, the balancing test has been applied and we conclude that appellant has failed to show a violation of his 6th Amendment rights. Further, the evidence against him is substantial. Two eyewitnesses to the robbery positively identified him as the offender. Appellant's first ground is overruled.

He next argues that error was committed when the State "bolstered" its eyewitness testimony by showing a prior "mug shot" identification. We are referred to a portion of the record wherein one of the eyewitnesses had testified concerning his selection of appellant from a lineup. He was then asked if he had looked over any pictures also to see if he could identify the appellant. He answered "Yes", and was permitted to identify the pictures in court and again identify the appellant. Not only did defense counsel not object, but he extensively cross-examined the witness on this matter. No error is shown.

Appellant's final ground alleges that a motion for an instructed verdict should have been granted because the evidence was "wholly insufficient." We cannot agree. The testimony of two eyewitnesses is sufficient to support the jury's verdict.

The judgment is affirmed.

MORRISON, J., concurs.