**Marvin Earl BELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 59469.

Court of Criminal Appeals of Texas, Panel No. 3.

Dec. 17, 1980.

On Rehearing July 22, 1981.

Rehearing Denied September 23, 1981.

Izak D. Gregory, Dallas, for appellant.

Henry Wade, Dist. Atty., J. T. Langford, Brady Sparks and Gilbert P. Howard, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, ODOM and CLINTON, JJ.

## OPINION

CLINTON, Judge.

Appeal is taken from a conviction for the offense of aggravated robbery. Appellant's punishment was assessed at 75 years confinement.

Viewed in a light most favorable to the jury's verdict of guilt, the evidence adduced revealed appellant to be one of two men who entered a Kentucky Fried Chicken restaurant located on Mockingbird Lane, then covered his face with a mask and held four employees at gunpoint while his unmasked confederate obtained the store's money on September 18, 1977.

Court appointed counsel for appellant has filed a brief in which two grounds of error are raised; neither has merit. Appellant *pro se*, however, has advanced ten grounds of error, of which ground of error number five must be sustained. This ground complains of the trial court's admission, over objection, of proof of a prior misdemeanor conviction for possession of marihuana, apparently under the theory that appellant had "opened the door" for the introduction of such evidence.

After the State rested its case in chief and appellant adduced testimony from two defense witnesses, appellant took the stand to testify in his own behalf, obviously against the advice of counsel. The transcription of the court reporter's notes reveals the following:

"Q [By Defense Counsel]: Did I advise you that should you take the stand *that the ... District Attorney would go into your past*, if there was anything criminal in your past they would bring it out in front of the jury?

A: Yes, sir.

Q: *Have you anything in your past that is of a criminal nature?*

A: *Yes, sir.*[1]

Q: Have you been down to what we call the joint, Texas Department of Corrections?"

Appellant admitted that he had been convicted of the felony offense of embezzlement on June 20, 1973, and was assessed a sentence of two years. According to appellant, he spent seven months in the Department of Corrections, then made parole the first time he was considered and thereafter did one year "on the streets," during which he had "no problems" and there discharged his sentence. Appellant stated that the embezzlement conviction was his only felony conviction and the seven months he served pursuant thereto was the only time he had ever spent in prison. He then related his activities on the day of the robbery, and denied that he had participated in it.

After appellant was passed to the State for cross examination, the prosecutor stated:

"Your Honor, I would like to get the reporter to read back a question asked by Defense [sic], because *I want to be absolutely sure it was asked just the way I wrote it down.* And I believe it was about the fifth ... or the tenth question that was asked the Defendant and I believe *the question was*, quote, *have you*

anything *in your past that is of a criminal nature.*

(whereupon the question was read back by the Court Reporter.)

The Court: Is that what you wanted, counsel?

[Prosecutor]: Yes, sir.

The Court: All right. Go ahead.

Q [By Prosecutor]: Now Mr. Bell, *I'm going to ask you part by part to give the full answer to that question* that was asked to you by your attorney. I'll just ask you first of all whether or not you are the same Marvin Bell who on May the 25th, 1973, in Cause No. C–73–1170 in Criminal—County Criminal Court of Dallas County, Texas, received a fine of one hundred dollars for the criminal offense of fleeing from a police officer?

A: *Yes, sir.*

Q: And you have already testified that you are the same person who on July the 12th, 1973 was arrested for the charge of embezzlement?

A: *Yes, sir.*

The prosecutor elicited further testimony regarding the embezzlement conviction, introduced a "pen packet" concerning it,[2] then continued:

"Q: Now, I'll ask you whether or not you are also the same Marvin Earl Bell who on June the 25th of 1976 in Cause No. CCR–75–5084–B was *arrested* for the *charge of possession of marijuana* [sic], a misdemeanor offense?

[Defense Counsel]: Your Honor, I would object. *That is to inflame the minds of the jury. This is not against moral turpitude.*

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2. The prosecutor asked appellant whether he was placed on "probation" a year and one half after his conviction, and appellant—seemingly not discerning between "probation" and "parole"—said "yes." The prosecutor then alleged that "that probation was finally revoked ... was it not?" Appellant replied that it was "never provoked [sic]." Asking again about a revocation, the assistant district attorney had

appellant identify his photograph in the "pen packet" and it was admitted into evidence.

Apparently having reviewed the "pen packet" himself, the prosecutor began again, this time eliciting the fact that appellant had been assessed a two year sentence on conviction for embezzlement in 1973, then concluded:

"Q: ... So as a matter of fact, you did not receive felony probation, you were sentenced at that time to the Texas Department of Corrections for that case, or within a week?"

To which appellant replied,

"Yes, sir."

[Prosecutor]: Judge, *I would love to answer that objection.* He asked this witness the question, 'Have you anything in your past of a criminal nature,' *and he has opened the door for anything regarding criminal activity.* I didn't ask it, he did. *And I certainly am entitled to show—*

[The Court]: *All right. Go ahead.*

Q [By Prosecutor]: Is that you?

A: Yes.

[Defense Counsel]: Your Honor, you overruled our objection?

[The Court]: Yes, sir.

A: *Yes, sir.*

Q: And you received a sentence in that cause, thirty days probated for one year, is that correct?

\* \* \* \* \* \*

A: I received a hundred and fifty dollar fine and six months probated.

\* \* \* \* \* \*

Q: So if the document reflected that it was one year, that would just be wrong, is that correct?

A: Yes, sir, to my knowledge." [3]

Apparently, the notion dictating the prosecutor's conduct and the trial court's rulings—that appellant "opened the door"—is a misconception of the evidentiary policy advanced by Article 38.24, V.A.C.C.P., which provides:

"When part of an act, declaration or conversation or writing is given in evidence by one party, *the whole on the same subject* may be inquired into by the other, as when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing *which is necessary to explain the same* may also be given in evidence."

Clearly, the rule contemplates insuring against any litigant's presenting an incomplete or biased version of facts which are adduced by him before the fact finder, but the "bottom line" criterion for admission of *any* evidentiary fact is that it be relevant to a material issue in the case on trial. See *Ochoa v. State*, 481 S.W.2d 847 (Tex.Cr.App. 1972); *Zonora v. State*, 121 Tex.Cr.R. 637, 51 S.W.2d 724 (1932).

When appellant's attorney asked the question thought to have "opened the door," he referred to appellant's "past of a criminal nature" which would be brought out by "the assistant district attorney" should appellant take the stand. It is a well settled principle that should one criminally accused choose to waive his right against self-incrimination by taking the witness stand, he is subject to being cross examined, and having his credibility impeached the same as any other witness, *Myre v. State*, 545 S.W.2d 820 (Tex.Cr.App. 1977); *Holder v. State*, 140 Tex.Cr.R. 55, 143 S.W.2d 613 (1944). But it is equally well settled that the State's use of prior specific acts of misconduct committed by a witness to reflect on his credibility is limited to introduction of the fact of the witness' final conviction for a felony or a misdemeanor offense involving moral turpitude. See generally *Murphy v. State*, 587 S.W.2d 718 (Tex.Cr.App.1979).

Thus, if defense counsel can be said to have "opened the door" for anything, it was for the introduction of appellant's "past of a criminal nature" which was *admissible* upon offer by the State, something toward which the prosecution had no "door" obstructing its passage to begin with. Furthermore, appellant *admitted* that he had a criminal past which could be adduced by the State before the jury. Therefore, no incorrect or incomplete version of the truth was presented to the jury by appellant, which would have allowed the prosecution to adduce ordinarily inadmissible [4] "criminal activity" to correct that version of the facts.

---

**3.** The prosecutor did not, however, produce any "document" regarding this misdemeanor conviction.

**4.** Compare *Reese v. State*, 531 S.W.2d 638 (Tex.Cr.App.1976) and *Nelson v. State*, 503 S.W.2d 543 (Tex.Cr.App.1974).

The only circumstance under which the fact of a misdemeanor conviction not involving moral turpitude, an arrest, indictment or other mere accusation may be admitted on the issue of a witness' credibility is when the witness makes a "blanket statement concerning his conduct, such as *never* having been charged [with] or convicted of any offense, or *never* having been 'in trouble'," on direct examination. *Murphy*, supra, at 722, n. 294; *Hoffman v. State*, 514 S.W.2d 248, 254 (Tex.Cr.App.1974). Because appellant here made no such blanket assertion, proof of his misdemeanor conviction for possession of marihuana had no probative value regarding any issue involved in this case.

We therefore hold that the trial court erred by admitting before the jury proof of appellant's misdemeanor conviction for possession of marihuana, an offense which, by statute, does not involve moral turpitude. Article 4476–15, V.T.C.A., Civil Statutes, Section 4.05(c).

Our next inquiry must focus on whether the trial court's error in this regard requires reversal of appellant's conviction.

The record reveals that after the exchange recited *ante* at p. 120 in which the trial court overruled appellant's objection—obviously agreeing with the prosecutor that appellant "opened the door" for "anything regarding criminal activity"—the floodgate gave way. Appellant was asked whether he had been *arrested* for another aggravated robbery, and *charged* with that offense along with "Morris Wayne Jackson," a name the prosecutor had repeatedly interjected into the proceeding over objection. When defense counsel objected and requested permission to approach the bench, the trial judge retorted, "You can make the objection there, counsel."

After an off the record discussion, the assistant district attorney confronted appellant with a question as to his having bought a "shiny new 9 millimeter automatic pistol" around September of 1977. When defense counsel objected, stating "what relevance does it have? * * * It's highly prejudicial," [5] the prosecutor responded, "It's a criminal offense," and the trial court overruled the objection. Appellant denied that he had bought a 9 millimeter automatic pistol.

Next the prosecutor asked appellant whether he had been *arrested* for yet another aggravated robbery, but this time, no objection was voiced.[6] After appellant admitted the arrest, the record reflects the following:

"Q [By Prosecutor]: And I will ask you whether or not you are the same Marvin Earl Bell who stands *indicted* not only in this cause for which you are on trial, but these other two causes for which you are on trial?

A: Yes, sir.

Juror: What other two, what other two causes?"

On rebuttal, the State called Morris Wayne Jackson, who testified that he had been appellant's confederate not only in the robbery on trial but also in the robberies of two other Kentucky Fried Chicken stores located on Lemmon and Lancaster Avenues respectively, as well as the robbery of a bakery. Jackson's testimony concerning the 9 millimeter automatic pistol was as follows:

"Q [By Prosecutor]: Did the Defendant ever have a 9 millimeter?

A: Yeah.

Q: How did he get ahold of that?

A: Beats me. He said some dude wanted to sell it.

Q: Some dude wanted to sell it to him?

5. The pistol identified by witnesses as being "similar" to the one used in the robbery by the man identified as appellant, was a .32 caliber chrome plated six shot revolver, a "Saturday Night Special," which had long been admitted into evidence as State's Exhibit No. 7.

6. In fact, defense counsel, apparently aware of both the futility of his complaints and the attention his objections were drawing to his client's "criminal activity," voiced no further objection through the remainder of the trial, all of which was devoted to adducing proof of these collateral matters.

A: Uh-huh.

Q: He bought it?

A: Yeah."

At the end of Jackson's testimony, the prosecutor asked the witness to identify State's Exhibit No. 19, a gun which Jackson stated appellant had shown him "after [appellant] bought it," and the weapon—apparently the 9 millimeter automatic—was admitted into evidence.[7]

It may be seen that the ramifications of the trial court's erroneous admission of appellant's misdemeanor conviction for possession of marihuana, on the ground it was allowed, were far greater than interjection of proof of one minor offense.[8] Furthermore, the State's evidence presented in its case in chief consisted only of three somewhat tentative identifications of appellant as one of the perpetrators of the robbery.[9] No other direct or circumstantial evidence was introduced which would have connected appellant to the crime. Thus, the State's evidence cannot be characterized in this case as "overwhelming."

We cannot say that the trial court's error did not contribute to appellant's conviction beyond a reasonable doubt. See *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); and *Chapman*

---

7. In *Hoffman*, supra, it was stated:
   "While great latitude is allowed in cross-examination in attempts to discredit the witness, the witness may not be cross-examined as to any fact that is collateral and irrelevant to the issue *merely for the purpose of laying a predicate for the introduction of independent evidence to impeach him by showing that, as to the matter embraced in the question, the witness has answered falsely. Corpus v. State*, 463 S.W.2d 4 (Tex.Cr.App. 1971); McCormick and Ray, Texas Law of Evidence (2nd Edition), Sec. 683, p. 526; 62 Tex.Jur.2d, Witnesses, Sec. 224." 514 S.W.2d at 252.

8. Appellant on redirect examination was able to ameliorate the effect on the jury of the possession of marihuana conviction when his attorney asked ". . . how many pounds did you have?", and he explained, "I think it was two joints."

9. Three employees of the Kentucky Fried Chicken store testified. One was Edward Brooks, the assistant manager, who, like the robbers, was a black man. Both Charles Adair and Tinya Meeker admitted that they initially paid little attention to the man identified as appellant, thinking he was "a friend of Ed's," as he came around the counter, before he concealed his face with a mask.

   Edward Brooks testified that he observed the robber only "as he came through the counter . . . stopped, said 'be cool,' then . . . continued on around." Brooks stated that he remembered the robber's skin color as "a little lighter" and his height as shorter than appellant's. Brooks also admitted that he "doubted" his recollection of appellant was definite enough that he would have recognized him as the robber had he met him in any place other than the courtroom. When asked whether he was sure appellant was the man who robbed him by the prosecutor, Brooks replied, "That's the face of the man that came to the door and put the hat over his head." When the prosecutor attempted to pursue Brooks' answer, defense counsel objected on the ground of bolstering and the trial court responded, "Well, I'm not sure—* * * Mr. Brooks, the Court understood you to say he [sic] identified this man as robbing him, that's the case, is it not?", to which Brooks replied, "right."

   Tinya Meeker made the most positive identification of appellant, stating she had an opportunity to view him briefly on two occasions, but conceded that the second time she was very scared and "wasn't really seeing or hearing anything right that moment," and "I don't recall watching him. All I recall is seeing the hat [or ski mask]." On cross-examination, Meeker admitted telling defense counsel during a pretrial interview that she "did not remember anything or see anything," but claimed she had been joking. When asked whether her recollection of appellant from the night of the robbery was definite enough to recognize him anywhere other than in a courtroom where he is "the only black male," she replied "I don't know." When defense counsel followed with, "If you don't know then you must be saying that your recollection of Mr. Bell is not that definite?", the trial judge sustained a prosecution objection.

   Charles Adair, the manager of the store, acknowledged conflicts in his examining trial testimony, with his testimony at trial. Adair also admitted he could not possibly identify any other person in the courtroom as the robber because appellant was the "only black male sitting here." Defense counsel asked whether Adair's "independent recollection of Mr. Bell [was] so strong that you could recognize him irregardless [sic] of the setting . . . ?" but the trial court sustained the prosecutor's objection that, "I don't think there is a person on earth that can fairly answer that question." Adair testified that his recollection of appellant was based on a three to four second observation.

*v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Accordingly, the judgment of conviction is reversed, and this cause is remanded to the trial court.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

ONION, Presiding Judge.

Appellant was convicted of aggravated robbery. After a jury found him guilty, the court assessed punishment at seventy-five (75) years' imprisonment.

The evidence reveals that appellant was one of two men who on September 18, 1977 entered a Kentucky Fried Chicken store located at 5440 Mockingbird Lane in Dallas and robbed the employees there.

On original submission a panel opinion reversed this conviction stating:

"We therefore hold that the trial court erred by admitting before the jury proof of appellant's misdemeanor *conviction* for possession of marihuana, an offense which, by statute, does not involve moral turpitude. Article 4476–15, V.T.C.A., Civil Statutes, Section 4.05(c)." (Emphasis supplied.)

As the panel opinion noted, the ground of error involved is ground of error No. 5 in appellant's pro se brief. The panel opinion states:

"This ground complains of the trial court's admission, *over objection*, of proof of a prior misdemeanor *conviction* for possession of marihuana, apparently under the theory that appellant had 'opened the door' for the introduction of such evidence." (Emphasis supplied.)

An examination of the record shows that appellant's counsel timely filed a brief in the trial court raising two grounds of error. See Article 40.09, § 9, V.A.C.C.P. Appellant's pro se brief raising said ground of

error No. 5 was filed only in this court. Since it was untimely filed, the error, if any, may be considered only as an unassigned error "in the interest of justice." See Article 40.09, § 13, V.A.C.C.P.[1] In considering the error, the panel opinion does not take note of this matter. In view of the circumstances, as shall be discussed, it may well be questionable whether the "unassigned error" should be considered "in the interest of justice." Further, the objection was to the inquiry of the appellant on cross-examination about his *arrest* for possession of marihuana. When proof of the *conviction* was subsequently elicited from the appellant by the State, there was no objection to such interrogation.

The actual ground of error reads:

"The trial court erred in allowing the appellant to be questioned about extraneous offenses which was (sic) not a felony nor a crime of moral turpitude."

In his argument under said ground, appellant refers to interrogation both as to the offense of fleeing from a police officer (to which there was no objection) and to the possession of marihuana charge.

To put the issue in proper perspective, the entire interrogation of the appellant needs to be examined.

On direct examination appellant's counsel reads:

"Q  Did I advise you that should you take the stand that the State of Texas by and through her ... by and through the Criminal District Attorney would go into your past, if there was anything criminal in your past they would bring it out in front of the jury?

"A  Yes, sir.

"Q  Have you *anything* in your past that is of a criminal nature?

"A  Yes, sir.

"Q  You have been down to what we call the joint, Texas Department of Corrections?

---

1.  It is sad to note that S.B. 265, Acts 1981, 67th Legislature, R.S., amending Article 40.09, V.A.C.C.P., deleted said § 13 as it now reads including the right of this court to consider an unassigned error "in the interest of justice." It is hoped that the Legislature will quickly correct this blunder.

"A  Yes, sir."  (Emphasis supplied.)

Thereafter, appellant testified the conviction was for embezzlement committed on June 20, 1973, and he received a two-year sentence.  He related he served seven months and then spent "a year parole on the streets" and did not have any problem with parole.  He testified this was the only time he had been down to the "joint."  Appellant then denied his participation in the instant robbery case.

After having the court reporter read back the questions on direct examination about appellant's criminal past, the prosecutor, giving the date, the court and cause number, asked the appellant if he was given "a fine of one hundred dollars for the criminal offense of fleeing from a police officer?"  Appellant answered in the affirmative.  There was no objection.  Appellant was then interrogated about his earlier admitted embezzlement conviction, and the pen packet concerning the same was introduced without objection.  The cross-examination continued:

"Q  Now, I'll ask you whether or not you are also the same Marvin Earl Bell who on June the 25th of 1976 in Cause No. CCR–75–5084–B was *arrested* for the charge of possession of marijuana, a misdemeanor offense?

"MR.  GREGORY (Defense Counsel): Your Honor, I would object.  That is to inflame the minds of the jury.  This is not against moral turpitude.

"MR.  SPARKS: Judge, I would love to answer that objection.  He asked this witness the question, 'Have you anything in your past of a criminal nature,' and he has opened the door for anything regarding criminal activity.  I didn't ask it, he did.  And I am certainly entitled to show—

"THE COURT:  All right.  Go ahead.

"Q  (By Mr. Sparks) Is that you?

"A  Yes.

"MR.  GREGORY:  Your Honor, you overruled our objection?

**2.**  No relief on this basis was requested by the appellant.

"THE COURT:  Yes, sir.

"A  Yes, sir."  (Emphasis supplied.)

Thereafter, without objection, the prosecutor established that appellant had been convicted in that "cause."  The penalty was shown to be thirty days and a $150.00 fine though a difference arose between the appellant and the prosecutor about whether the penalty was probated for six months or a year.

Further, on cross examination the prosecutor elicited from the appellant that he was arrested on September 27, 1977 for aggravated robbery at Church's Fried Chicken at 3103 Lemmon Avenue, Dallas, and and was arrested on September 28, 1977, for aggravated robbery at a Kentucky Fried Chicken store located at 3414 South Lancaster in Dallas.  All of this was without objection.

On redirect examination appellant's counsel elicited from him that he had filed a pro se motion to be tried on all three robbery cases at the same time and had been blocked by the District Attorney.  Further, on redirect examination it was established that appellant possessed "two joints" in the marihuana case, and that when convicted of fleeing from an officer he was not represented by counsel.[2]

It is well settled that when a defendant chooses to waive his privilege against self-incrimination by voluntarily taking the witness stand he is generally subject to the same rules as any other witness.  He may be contradicted, impeached, made to give evidence against himself, cross-examined as to new matter, and treated in every respect as any other witness testifying in behalf of the defendant, except when some statute forbids certain matters to be used against him, such as proof of his conviction on a former trial of the present case or his failure to testify on a former trial or hearing.  *Brumfield v. State*, 445 S.W.2d 732 (Tex.Cr.App.1969); *Myre v. State*, 545 S.W.2d 820 (Tex.Cr.App. 1977).

■ Mere arrests or charges of offenses are generally inadmissible for impeachment purposes. Normally the State cannot impeach a witness concerning his criminal record unless the charges have resulted in final convictions for felonies or other final convictions involving moral turpitude, none of which are too remote. *Ochoa v. State*, 481 S.W.2d 847 (Tex.Cr.App.1972).

In *Ochoa* this court wrote:

"As to impeachment under Article 38.-29, Vernon's Ann.C.C.P., it must be remembered that the conviction must be a final one and must be for a felony offense or one involving moral turpitude, and even then it must not be too remote. See *Stephens v. State*, 417 S.W.2d 286 (Tex.Cr.App.1967) . . .

"An exception to the foregoing prevails, however, where the witness makes blanket statements concerning his exemplary conduct such as having never been arrested, charged or convicted of any offense, or having never been 'in trouble,' or purports to detail his convictions leaving the impression there are no others. *Stephens v. State*, supra; *Orozco v. State*, 164 Tex.Cr.R. 630, 301 S.W.2d 634 (1957) and cases there cited. In such cases, the State may refute such testimony despite the nature of the conviction used or its remoteness. *Stephens v. State*, supra."

In *Nelson v. State*, 503 S.W.2d 543, 545 (Tex.Cr.App.1974), this court stated:

" . . . The exception arises when the witness, by his direct testimony, leaves a false impression of his 'trouble' with the police. In that situation, it is legitimate to prove that the witness had been 'in trouble' on occasions other than those about which he offered direct testimony."

In *Nelson* the defendant on direct examination was asked, " . . . [H]ave you ever been in trouble before?" This inquiry established he had been convicted and placed on probation for "forgery and passing." The defendant was then asked, "Is that all of the trouble you have been in?" Nelson answered he had served 30 months in the pen as a result of a conviction for assault with a prohibited weapon. He then pro-

claimed his innocence of the robbery for which he was being tried.

On cross-examination the prosecutor was permitted to ask about a number of arrests which had not resulted in final convictions. Such cross-examination was held proper under the exception to the general rule discussed above.

In *Alexander v. State*, 476 S.W.2d 10 (Tex.Cr.App.1972), where the defendant testified on direct examination that "he had not been in trouble before," the State on cross-examination was permitted to inquire about prior arrests for extraneous offenses to refuse the defendant's blanket statement concerning his exemplary conduct. In *Heartfield v. State*, 470 S.W.2d 895 (Tex.Cr. App.1971), questions on cross-examination concerning the defendant's arrest were held proper after he had testified on direct examination that "since 1949 he had not been in trouble with the law." And in *Barnett v. State*, 445 S.W.2d 205 (Tex.Cr.App.1969), we held that cross-examination on arrests, which the defendant denied, after he had testified that he had not "been in any trouble with the law in the past eight years" was not error over an objection that it was improper cross-examination. See *Reese v. State*, 531 S.W.2d 638 (Tex.Cr.App.1976).

The panel opinion in the instant case notes that appellant's counsel established on direct examination he had informed the appellant the State could go into anything of a criminal nature in his past. The opinion then seemingly views the following question, "Have you anything in your past that is of a criminal nature?" as a question limited to final convictions for felonies or offenses involving moral turpitude, none of which is too remote. The panel opinion regards the defense strategy to defuse the impact of any possible impeachment of the appellant as going no further than the general rule would have permitted the State to go. Therefore, the panel concluded it was error for the trial court to admit on cross-examination proof of appellant's misdemeanor conviction for possession of marihuana, although the objection, such as it was, was addressed to the question concern-

ing the arrest for such offense and not to the proof of the conviction. I cannot agree.

■ Under all the circumstances, the ground of error advanced in appellant's untimely filed pro se brief should not be considered as unassigned error "in the interest of justice." See Article 40.09, § 13, V.A.C.C.P. This ground of error, under the circumstances, was not what was envisioned by that statutory provision. The contention is not one of constitutional dimension nor such a serious question of law that "justice" requires its discussion. *Bellah v. State*, 415 S.W.2d 418 (Tex.Cr.App.1967).

■ Secondly, if the ground is to be considered, it is noted the objection to the question of the arrest for possession of marihuana to the effect it would inflame the minds of the jurors and "This is not against moral turpitude" was not sufficient to preserve the error now claimed on appeal either as stated by the appellant or restated for him by the panel on original submission.

■ Thirdly, even if the objection was sufficient, the State had the right to inquire under the exception to the general rule about the arrest and conviction for possession of marihuana since the appellant had "opened the door" on direct examination. Despite the characterization to the contrary by the panel, the question asked and answered on direct examination could not have left any other impression with the jury except that he had nothing in his criminal past except the embezzlement conviction, particularly when it was established on direct examination that this was the only time appellant had been to the "joint" and had done well on parole. *Nelson v. State*, supra; *Ochoa v. State*, supra.

■ . Fourthly, if there was any conceivable error, the error was harmless beyond a reasonable doubt. See *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). This is particularly true in view of the fact

that appellant's conviction for fleeing from a police officer, and the two pending robbery charges were admitted without objection, and the fact that on redirect examination appellant established he wanted all three robbery cases tried together, and elicited details about the marihuana possession case about which the State could not legally prove and did not try to do so.

Appellant's ground of error No. 5 in his pro se brief is overruled. State's motion for rehearing is granted.

■ Appellant's counsel advances two grounds of error. First is that the "court erred by allowing the State to introduce photographic lineup pictures of the defendant to bolster the in-court identification of the State's witnesses."

Neither the ground of error nor argument thereunder points out what State's witnesses the appellant has in mind nor does the appellant call our attention to any portion of the record where we may identify the action complained of. This ground of error is not in compliance with Article 40.09, § 9, V.A.C.C.P. Nothing is presented for review. This court, with its tremendous caseload, should not be asked to search through a voluminous record trying to guess and identify the action of which a defendant complains.

We do find in our search of the record that the State's Exhibits 8 through 13 were introduced through the testimony of Charles Adair, the complaining witness, manager of the Kentucky Fried Chicken store in question, and Edward Brooks, the assistant manager.[3] Both witnesses identified the exhibits as the photographic display or spread they were shown individually by the police. They testified they identified appellant's picture from the photographic spread. The exhibits were introduced over the objection of "bolstering."

Appellant cites and relies upon *Lyons v. State*, 388 S.W.2d 950 (Tex.Cr.App.1965), where this court stated:

---

**3.** Tinya Meeker, an employee of the store at the time of the robbery, testified she was shown a photographic spread by a police officer and

selected appellant's picture. There was no objection to this testimony, and the photographs were not introduced.

"... While a witness who has identified her assailant at the trial may testify that she also identified him while he was in custody of the police, others may not bolster her unimpeached testimony by corroborating the fact that she did identify him."

Adair and Brooks identified the appellant at trial as one of the two robbers and stated they had identified his picture from a photographic spread. We do not find that others were permitted to bolster their testimony. *Lyons* is not in point.

The State also notes that the witnesses were cross-examined about the details of the photographic identification and the exhibits were thus admissible. See *George v. State*, 498 S.W.2d 202 (Tex.Cr.App.1973); *Hubbard v. State*, 496 S.W.2d 924 (Tex.Cr.App.1973); *Alejandro v. State*, 394 S.W.2d 523 (Tex.Cr.App.1965).

No error is presented. The ground of error is overruled.

■ Secondly, appellant's counsel contends the trial court erred by its failure to grant appellant's pro se motion to shuffle the jurors. See Article 35.11, V.A.C.C.P.

The record does not show that the pro se motion was ever presented to the court nor does it show that the jury panel was not in fact shuffled. In *Dynes v. State*, 479 S.W.2d 676 (Tex.Cr.App.1972), this court wrote:

"If the court failed to shuffle the panel once they arrived at his court, as appellant contends in his brief and by oral argument, he should have made this fact known to this court by a bill of exception or otherwise."

There is nothing to show that the jury was selected in violation of any provision of the Code of Criminal Procedure.

The contention is overruled.

We have examined the contentions in appellant's pro se briefs and do not find any that should be considered "in the interest of justice." See Article 40.09, § 13, V.A.C.C.P.

State's motion for rehearing is granted. The judgment is affirmed.

TEAGUE, J., dissents.

CLINTON, Judge, dissenting.

If the Court deems this case an appropriate marker to draw the line on what constitutes "unassigned error which in the opinion of the Court of Criminal Appeals should be reviewed in the interest of justice," Article 40.09, § 13, V.A.C.C.P., so be it. However, it ought to do better than allude to *Bellah v. State*, 415 S.W.2d 418 (Tex.Cr.App.1967) for the pretension that the line has already been drawn.[1]

Hardly a Wednesday goes by that this Court does not hand down a fist full of opinions, mostly per curiam to be sure, reciting that nothing has been found in the record "that might arguably support the appeal," sometimes adding that discussing contentions in a pro se brief "would add nothing to the jurisprudence of the State." Only recently a Court Panel, invoking the theory that there is no right to hybrid representation, bluntly stated a pro se brief "presents nothing for review," but still routinely examined the contentions made for error "that should be considered in the interest of justice," *Rudd v. State*, 616 S.W.2d 623 (Tex.Cr.App.1981). Apparently if any standard exists it is a much more flexible one than the majority now suggests. See, e. g., *Klueppel v. State*, 505 S.W.2d 572, 574–575 (Tex.Cr.App.1974)—"in view of the gravity of the error" in a prosecutorial argument; *Felder v. State*, 564 S.W.2d 776, 778 (Tex.Cr.App.1978)—though the ground of error did not comply with Article 40.09, the contention under it referring "to a specific instance of allegedly improper argument by the prosecutor" considered, found improper but cured by instruction; cf. *Rae v. State*, 423 S.W.2d 587, 589 (Tex.Cr.App.

---

1. Without any appearance of setting a standard the Court in *Bellah v. State*, supra, merely stated the obvious: A claimed error in not having jurors' names placed in a receptacle and well shaken in compliance with Article 35.11, V.A.C.C.P., is "not one of constitutional dimension, *nor* does it present such a serious question of law" that requires discussion under § 13, supra. (All emphasis is mine unless otherwise indicated.)

1968); *Ritchey v. State*, 407 S.W.2d 506 (Tex.Cr.App.1966)—no brief filed, but objection to action of trial court in permitting appellant's former wife to testify reviewed and upheld; see also the host of cases annotated following Article 40.09, supra, at notes 607–618, from which no bright line rule is readily perceived.

Thus, what is reviewable "in the interest of justice" seems to depend on the particular collective judgment of the affected members of the Court at any given moment, the outer limits perhaps having been reached by a majority of the Court, writing through Presiding Judge Onion, in *Armstrong v. State*, 550 S.W.2d 25, 29 [2] (Tex.Cr. App.1977) (Opinion on State's Motion for Rehearing). Accordingly, in addressing it, I could not then, and still cannot, say with the confidence exuded by the majority that

**2.** In note 1 it was explained that on original submission the record made clear that there was "a serious question as to the legality" of a search of a motor vehicle, and indicated there had been a hearing on a motion to suppress. The transcription of the reporter's notes of the motion hearing was not in the record, but was ultimately obtained from the trial court through efforts of a staff member of the Court at the instance of the judge to whom the cause had been assigned. The Court pointed to several earlier cases and found "adequate precedent" for consideration of the search question which had not been assigned as error in appellant's motion for new trial or in his brief.

**3.** The local prosecuting attorney presents a motion for rehearing and supporting brief which commendably confront the rationale and result of the panel opinion headon. A briefer presentation with respect to the merits is made by the State Prosecuting Attorney, and it is he who questions our addressing the pro se ground of error. However, he does not complain of reviewing the ground in the interest of justice; rather, he asserts that to consider it is to allow "dual representation on appeal" contrary to the lesson of the opinion on rehearing in *Landers v. State*, 550 S.W.2d 272, 275 (Tex.Cr.App.1977).

(Whether *Landers v. State*, supra, was correctly decided is a serious question that we are not called on here to decide. Suffice it to say that the major fallacy in the opinion on rehearing is the utter failure of the Court to do what it said should be done—to interpret the constitutional provision "in light of conditions existing at the time of its adoption." In Texas that "the accused shall have the right of being heard, by himself, or counsel, or both" first appeared in the Sixth Declaration of Rights in

appellant's pro se ground of error five is "not what was envisioned by that statutory provision" in Article 40.09, § 13, supra. Indeed, the considerable argument over its proper disposition suggests that it is.[3]

I adhere to the panel opinion on original submission and, therefore, dissent to the judgment of the Court.

ROBERTS and ODOM, JJ., join.

the *1836* Constitution of the Republic of Texas. The Court somehow assumes that the Framers were drawing from the common law of England, not mentioning at all their understanding of the criminal law of the former combined State of Coahuila and Texas. Without developing the matter in full at this time, I would now simply point out that pursuant to Decree No. 277, "A Plan for the Better Regulation of the Administration of Justice in Texas," 1 Gammel's Laws of Texas 364 ff, in criminal cases "the parties shall have the privilege of being heard by themselves, without employing an agent or attorney, at their option," Article 31, *id.*, at 368, but "where the accused may not be able to procure a lawyer or attorney to defend his cause, the judge shall appoint one for that purpose," Article 32, *ibid.*; furthermore, at the Trial Criminal Plenario, after opening statements and declaration of the defendant upon the accusation, "after having concluded the relation [sic] which he shall make by himself," the accused "shall be questioned by his attorney, as he may see proper," Article 67, *id.*, at 372, and at the conclusion of all testimony the complaining party "shall make a verbal plea" and the accused "shall also make his defence [sic] in the same manner," Article 71, *id.*, at 372. Thus, before the Framers drafted and the people adopted the 1836 Constitution, they had been living under a criminal justice system in which the accused had the right to be heard by himself, by counsel or both. Since as *Landers* points out, the common law rule forbidding participation of counsel in felony cases was not abrogated until 1836, obviously our forebearers did not draw their Declaration of Right to be heard from that source.)