COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-195-CR

 

WILLIAM RICHARDSON                                                                    APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

               FROM
THE 362ND DISTRICT COURT OF DENTON COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

I. 
Introduction

In
four issues, Appellant William Richardson appeals his conviction for fraudulent
use or possession of identifying information. 
We affirm

II. 
Factual and Procedural Background








In
the early morning hours of December 4, 2007, Flower Mound Police Officer Nick
Hill pulled over a vehicle for a traffic violation.  Officer Hill approached and made contact with
the driver, identified as Richardson by his driver=s
license and insurance.  After making
contact with the passenger, Gary Wayne Webster, Officer Hill instructed
Richardson to stand at the rear of the vehicle while he ran a standard computer
check.  The computer check returned an
outstanding warrant for Richardson. 
Officer Hill, requested a back‑up unit and asked dispatch for
confirmation on Richardson=s
warrant.  The back‑up unit, driven
by Officer Ben Lippens, arrived almost immediately.

While
Officer Lippens kept an eye on Webster, Officer Hill questioned
Richardson.  He asked whether Richardson
owned the vehicle he was driving; Richardson responded that the car belonged to
his mother.  Officer Hill also asked, ADo
you have any problem if I take a look in your car?@
Richardson responded that he did not. 
Shortly thereafter, dispatch confirmed the warrant, and Officer Hill
arrested Richardson and seated him in the backseat of his patrol unit.

The
Officers then removed Webster from the front passenger seat and searched the
vehicle, discovering a Wal‑Mart bag in the driver=s
seat containing a clear plastic wallet insert with a social security card, a
Unicard, a Visa card, and a Texas Department of Human Services card, all
bearing the name Burgie Davis.  The bag
also contained Wal‑Mart gift cards still attached to their original
cardboard backing and a receipt from the Fairfield Inn in Richardson=s
name.  In the center console, the
officers discovered another bag containing more gift cards.








The
officers found a laptop computer and a clear plastic box on the front passenger
side floorboard.  The box contained transparency
graphing paper; razor blades; glues and adhesives; gift cards; and drivers=
licenses, identifications, and keychain credit cards, all belonging to
individuals other than Richardson or Webster, including some that belonged to
Burgie Davis.  On the driver=s
side backseat floorboard, the officers discovered a red plastic folder
containing, among other items, a list of The Sun Shop=s customers
and their financial information (The Sun Shop list); pictures of Webster; a
document from a website discussing magnetic strip readers; and hotel receipts
with credit card information on individuals other than Richardson or Webster.  On the middle rear floorboard, the officers
found a small photo printer that was attached to a laptop computer (belonging
to Webster) and to a power inverter plugged into the cigarette lighter.  The officers also discovered a Nikon camera,
a cell phone, CDs, and DVDs in the backseat. 
In the trunk, the officers found an aluminum box containing razor
blades, white‑out, hard drives for laptops, glue, a screwdriver,
batteries, scissors, and printer cartridges.

After
searching the vehicle, Officer Hill transported Richardson to the jail. A
wallet found in Richardson=s
back pocket contained a business card for The Sun Shop, clear graphing
transparency paper, and receipts showing purchases made using a Visa card
discovered in the clear plastic box found on the front floorboard.  The State charged Richardson with fraudulent
possession of identifying information for over fifty individuals (specifically
those on The Sun Shop list) and included an enhancement paragraph for a prior
felony convictionCaggravated assault on a
peace officer.








At
trial, in addition to both Officer Hill and Officer Lippens testifying to the
facts stated above, Kelly Wood, an ex‑employee of The Sun Shop, testified
that she had stolen billing lists from The Sun Shop, taken them to Webster=s
house, assisted Webster and Richardson in making fraudulent cards from the
billing lists, and that she, Richardson, and Webster had used the fraudulent
cards to shop.  Wood also testified that
she went to Webster=s house to Aget
high@ on
methamphetamine.  She further stated that
Richardson and Webster were roommates and that Richardson was Webster=s
driver. 

Elizabeth
Herring, The Sun Shop=s manager, confirmed that
the list found in the vehicle was, in fact, one of The Sun Shop=s
billing lists.  Herring testified that
The Sun Shop=s
employees were not allowed to give out its customers credit card information to
third partiesCshe
specifically testified that neither Wood, Richardson, nor Webster had
permission to have The Sun Shop=s
billing list.  She further testified that
she recognized fifty‑seven specific customers on the list and that none
of them had given their permission for The Sun Shop to share their information.

The
owner of The Sun Shop, Dennis Sheldon, also testified that the business was not
allowed to, and did not, give anyone permission to have The Sun Shop=s
billing lists.  Sheldon confirmed Wood=s
dates of employment and also confirmed that Wood had stolen billing lists from
The Sun Shop.








Jesse
Basham, an FBI computer forensic examiner, testified that the laptop found in
the vehicle contained photographs, signature strips, driver=s
license templates, university ID cards, credit card numbers, and social security
numbers for individuals other than Richardson or Webster.

At
the close of evidence, the jury found Richardson guilty of fraudulent use or
possession of identifying information for over fifty individuals (specifically
those individuals on The Sun Shop list). 
During the punishment phase, Richardson pleaded true to the enhancement
paragraph in the indictmentCaggravated
assault on a peace officerCand
he also stipulated that he had a previous felony conviction for driving while
intoxicated (DWI), along with two other DWI convictions.  The jury assessed punishment at life, and the
trial court sentenced Richardson accordingly. 
This appeal followed. 

III. 
Sufficiency of the Evidence

In
his second issue, Richardson argues that the evidence is legally and factually
insufficient to support his conviction.

A.  Fraudulent Use or Possession of Identifying
Information

Under
' 32.51
of the penal code, a person commits fraudulent use or possession of identifying
information, if the person, with the intent to harm or defraud another,
obtains, possesses, transfers, or uses an item of identifying information of
another person without the other person=s
consent.  Tex. Pen. Code Ann. '
32.51(b) (Vernon Supp. 2008).  Because
Richardson only challenges the sufficiency of the evidence to show that Ahe
was in >possession= of
[The Sun Shop list],@ we limit our discussion to
address only the possession element of the offense.








This
appears to be a case of first impression. 
We, like the parties, were unable to find any prior case law addressing
a sufficiency challenge to the possession element of fraudulent use or
possession of identifying information. However, we agree with the parties that
the proper law to apply in this case is the body of law pertaining to
affirmative links developed in controlled substance cases.  See Evans v. State, 202 S.W.3d 158,
161B62
(Tex. Crim. App. 2006) (discussing the affirmative links rule and pointing out
that the purpose of the rule is to protect the innocent bystander, relative,
roommate, or friend from conviction merely by their proximity to another=s
contraband).[1]  Therefore, we apply the linking rule to
determine whether the evidence was legally and factually sufficient to show
that Richardson was in possession of The Sun Shop list. 

B.  Linked to Contraband








To
prove possession, the State must show the accused (1) exercised control,
management, or care over the contraband and (2) knew the matter possessed was
contraband.  Evans, 202 S.W.3d at
161; Cuong Quoc Ly v. State, 273 S.W.3d 778, 781 (Tex. App.CHouston
[14th Dist.] 2008, pet. ref=d).  Possession may be proved through either
direct or circumstantial evidence.  Poindexter
v. State, 153 S.W.3d 402, 405B06
(Tex. Crim. App. 2005); see also Rice v. State, 195 S.W.3d 876, 881
(Tex. App.CDallas
2006, pet. ref=d)
(stating jury could infer knowing or intentional possession of contraband).

When,
as here, the accused is not in exclusive possession or control of the place
where contraband is discovered, the State must show additional facts and
circumstances linking the accused to the contraband to show the accused=s
knowledge of or control over the contraband. 
Poindexter, 153 S.W.3d at 406; Grisso v. State, 264 S.W.3d
351, 355 (Tex. App.CWaco 2008, no pet.).  We consider the totality of the circumstances
when determining whether the accused is linked to the recovered
contraband.  See Hyett v. State,
58 S.W.3d 826, 830 (Tex. App.CHouston
[14th Dist.] 2001, pet. ref=d).  The accused=s
connection with the contraband must be Amore
than just fortuitous.@ Poindexter, 153
S.W.3d at 405B06.  The accused=s
presence at the scene where contraband is found is insufficient, by itself, to
establish possession. Evans, 202 S.W.3d at 162.  However, presence or proximity combined with
other direct or circumstantial evidence (e.g., Alinks@)
may be sufficient to establish the elements of possession beyond a reasonable
doubt.  Id. 








Reviewing
courts have developed several factors showing a possible link between the
accused and contraband, including:  (1)
the accused=s
presence when the search was conducted, (2) whether the contraband was in plain
view, (3) the accused=s proximity to and the
accessibility of the contraband, (4) whether the accused possessed other
contraband when arrested, (5) whether the accused made incriminating statements
when arrested, (6) whether the accused owned or had the right to possess the
place where the contraband was found, (7) whether the contraband was found in
an enclosed place, and (8) whether the conduct of the accused indicated a
consciousness of guilt.  See Cuong
Quoc Ly, 273 S.W.3d at 781B82; Grisso,
264 S.W.3d at 355.  The number of linking
factors present is not as important as the Alogical
force@
they create to prove the accused knowingly or intentionally possessed the
controlled substance.  Evans, 202
S.W.3d at 162; see also Roberson v. State, 80 S.W.3d 730, 735 (Tex. App.CHouston
[1st Dist.] 2002, pet. ref=d)
(recognizing proof of links between the accused and contraband Agenerates
a reasonable inference that the accused knew of the contraband=s
existence and exercised control over it@).

C.  Legal Sufficiency

1.  Standard of Review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).

2.  Analysis








Here,
although Richardson was not alone in the vehicle at the time of the stop, he
was the driver of the vehicle and the vehicle belonged to his mother. Thus,
Richardson was in possession and control of the vehicle.

In
addition to Richardson=s control over the vehicle,
there are several other factors linking him to The Sun Shop list found in the
vehicle, including: (1) Wood=s
testimony that Richardson knew of the billing lists from The Sun Shop and that
Richardson had assisted in making fraudulent cards from the billing lists; (2)
Wood=s
testimony that Richardson had used the fraudulent cards to shop; (3) The Sun
Shop list=s
proximity to RichardsonCthat is, the backseat
floorboard on the driver=s side; (4) Richardson=s
wallet, which contained a business card from The Sun Shop in addition to clear
graphing transparency paper and receipts linking him to the clear plastic box
found in the front floorboard of the vehicle; (5) the clear plastic box, which
contained transparency graphing paper; razor blades; glues and adhesives; gift
cards; and drivers= licenses, identifications,
and keychain credit cards, all belonging to individuals other than Richardson
or Webster; (6) credit cards inside the center console; and (7) the laptop
computer and photo printer plugged into the cigarette lighter, which contained
templates for creating fraudulent identifications.








Based
on the direct and circumstantial evidence presented here, we hold that a
reasonable jury could conclude beyond a reasonable doubt that Richardson
knowingly exercised joint possession and control over The Sun Shop list along
with Webster.  Thus, the evidence is
legally sufficient to support the verdict. 
Accordingly, we overrule this portion of Richardson=s
second issue.

D.  Factual Sufficiency

1.  Standard of Review

When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Steadman v. State, 280 S.W.3d 242, 246
(Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s
determination is manifestly unjust.  Steadman,
280 S.W.3d at 246; Watson, 204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, although legally sufficient,
contradicts verdict.  Watson, 204
S.W.3d at 417.








Unless
we conclude that it is necessary to correct manifest injustice, we must give
due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000); see Steadman, 280 S.W.3d at 246.  Evidence is always factually sufficient when
it preponderates in favor of the conviction. 
Steadman, 280 S.W.3d at 247; see Watson, 204 S.W.3d at
417.

2.  Analysis

Richardson
combined his legal and factual sufficiency challenges together in a single
issue.  We construe Richardson=s
argument to challenge the factual sufficiency of the evidence on two
grounds:  (1) the folder containing The
Sun Shop list clearly belonged to Webster and (2) he would not have consented
to the search of the vehicle had he known about the list.








Viewing
the evidence neutrally, we recognize that the folder containing The Sun Shop
list also contained items linking it to Webster and that Richardson consented
to the search of his vehicle.  However,
Richardson was the driver of a vehicle that was full of evidence relating to an
identity theft scamCthat is, identifying
information for individuals other than Richardson or Webster, blank credit
cards, transparency paper, and a laptop computer and printer capable of
creating fraudulent identifications.  There
was also evidence in Richardson=s
wallet connecting him to evidence within the vehicle that related to the
identity theft scam.  See Wootton v.
State, 132 S.W.3d 80, 89B90
(Tex. App.CHouston
[14th Dist.] 2004, pet. ref=d)
(holding factually sufficient evidence existed that appellant knew tanks
contained anhydrous ammonia when appellant=s
truck, where the tanks were found, also contained many other ingredients used
to manufacture methamphetamine). 
Moreover, there was testimony that Richardson knew of The Sun Shop list
and that he made fraudulent cards from the list, which he later used.

In
light of the evidence supporting the jury=s
verdict, we conclude that the evidence is not so obviously weak that the
verdict is clearly wrong and manifestly unjust or that the proof of guilt is
against the great weight and preponderance of the evidence.  See Steadman, 280 S.W.3d at 246; Watson,
204 S.W.3d at 414B15, 417.  Therefore, we hold that the evidence is
factually sufficient to support Richardson=s
conviction.  Accordingly, we overrule the
remaining portion of Richardson=s
second issue.

IV. 
Corroboration Evidence

In
his first issue, Richardson asserts that, apart from Wood=s
accomplice testimony, there is insufficient evidence linking him to the
crime.  We disagree.

A.  Accomplice-Witness Rule








AArticle
38.14 [of the Texas Code of Criminal Procedure] provides that a defendant
cannot be convicted of an offense upon the testimony of an accomplice without
other corroborating evidence >tending
to connect= the
defendant to the offense.@  Simmons v. State, 282 S.W.3d 504, 505
(Tex. Crim. App. 2009).  In determining
the sufficiency of non‑accomplice evidence to corroborate accomplice
testimony, the proper appellate standard is Awhether
a rational fact-finder could conclude that the non‑accomplice evidence >tends
to connect=
appellant to the offense.@  Id. at 509; see Brown v. State,
270 S.W.3d 564, 567 (Tex. Crim. App. 2008) (explaining that the accomplice‑witness
rule Arequires
that, before a conviction may rest upon the testimony of an accomplice witness,
the accomplice=s
testimony must be corroborated by independent evidence tending to connect the
accused with the crime@).  Non‑accomplice evidence must not be
taken as isolated facts, but rather considered together as a whole, and if the
force of the evidence is such, as a whole, that it tends to connect the
defendant to the offense, then it is sufficient.  Simmons, 282 S.W.3d at 511.  AThe
corroborative evidence, however, need not be sufficient in itself to establish
guilt, nor must it directly link the accused to the commission of the offense.@  Brown, 270 S.W.3d at 567.  AWe
view the evidence in the light most favorable to the jury=s
verdict.@  Id.

B.  Non-accomplice Evidence

The
non‑accomplice evidence in this case consisted of (1) Richardson driving
a vehicle which contained among other things:

(a)
a Wal‑Mart bag containing a clear plastic wallet insert with a social
security card, a Unicard, a Visa card, and a Texas Department of Human Services
card, all bearing the name Burgie Davis; Wal‑Mart gift cards still
attached to their original cardboard backing; and a receipt from the Fairfield
Inn in Richardson=s name;

 

(b)
a clear plastic box in the floorboard on the front passenger side containing
transparency graphing paper; razor blades; glues and adhesives; gift cards; drivers= licenses,
identifications, and keychain credit cards, all belonging to individuals other
than Richardson or Webster, including some that belonged to Burgie Davis;

 

(c)
a bag in the center console containing more gift cards;

 








(d)
a red plastic folder in the backseat floorboard on the driver=s side containing The
Sun Shop list; and

 

(e)
a small photo printer in the middle rear floorboard of the vehicle attached to
both a laptop computer and a power inverter plugged into the cigarette lighter,

 

(2) a wallet in Richardson=s
back pocket containing a business card for The Sun Shop, clear graphing
transparency paper, and receipts showing purchases made using a Visa card
discovered in the clear plastic box found in the front floorboard of the
vehicle, (3) expert testimony that the laptop contained photographs, signature
strips, driver=s
license templates, university ID cards, credit card numbers, and social
security numbers of individuals other than Richardson or Webster, and (4)
testimony that The Sun Shop list was in fact The Sun Shop=s
billing list, which neither Richardson nor Webster had permission to possess.

C.  Analysis








In
sum, Richardson was driving a vehicle that had fraudulent identifying
information all throughout itCsome
of which was in plain view.  There were
receipts bearing Richardson=s
name in a bag containing identifying information belonging to someone other
than Richardson or Webster.  A laptop
computer  with the capability of creating
fraudulent identifications was attached to a power inverter plugged into the
vehicle=s
cigarette lighter.  And, Richardson=s
wallet contained a business card from The Sun Shop in addition to receipts that
connected him to the plastic box found in the vehicle=s
front passenger floorboard, which contained fraudulent identifying
information.  Thus, considering the non‑accomplice
evidence together as a whole while viewing the evidence in the light most
favorable to the jury=s verdict, we conclude that
a rational factfinder could have concluded that the non‑accomplice
evidence tended to connect Richardson to the offenseCthat
is, fraudulent possession of The Sun Shop list. 
See Simmons, 282 S.W.3d at 508, 511; Brown, 270 S.W.3d at
567.  Accordingly, we overrule Richardson=s
first issue. 

V. 
Extraneous Offense Evidence

In
his third issue, Richardson contends that the trial court abused its discretion
by admitting the following testimony over his Texas Rules of Evidence 404(b)
objection regarding his alleged participation in Adumpster
diving.@[2]

Direct
Examination:

[State]:  Did [Webster] or [Richardson] ever obtain
numbers from outside The Sun Shop?

 

[Richardson
objected under Rule 404(b) and Rule 403. The trial court overruled Richardson=s objections but
instructed the jury to only consider the line of questioning as it pertained to
Richardson=s knowledge or
intent.]

 

[State]:  Ms. Wood, I believe the question that I=d asked was: Were
credit card numbers ever obtained outside of The Sun Shop records?

 

[Wood]:  Yes.

 

[State]:  And how were those credit card numbers
obtained?

 








[Wood]:  Dumpster diving.  I mean, like out of gas stations, they throw
their roll away, you know.

 

.
. . .

 

[Wood]:  The roll with the credit card number on
it.  Some gas stations print out the last
four; some print out the whole number. 

 

. . . .

 

[State]:  Okay. 
After you-allCwere you ever with
them when that was going on?

 

[Wood]: 
At the gas stations?

 

[State]: 
Yes.

 

[Wood]: 
No.

 

[State]:  After those numbers were obtained, what would
happen to them?

 

[Wood]:  We would take them back to [Webster=s] house, and then
[Richardson] would call and check the numbers and either writeB

 

[State]:  Let me stop you there.  Call who and check the numbers?

 

[Wood]:  It=s a 1-800 number, 888 number.  I don=t know what it is.  But you just call and you put in the number,
and then you put in a dollar amount.  And
it will say either it=s been approved or it
hasn=t, you know. . . .

 

[State]:  Okay. 
Did you ever call and check those numbers?

 

[Wood]:  Yes.

 

[State]:  And you saw personally Mr. Richardson doing
that also?

 

[Wood]:  Yes. 

 

Cross-Examination:

 








[Defense]:  How did youCwhere were these
dumpsters that you went through?

 

[Wood]:  I didn=t say that I went through them.  But, I mean, I don=t know.  They=re outside of gas stations.

 

[Defense]:  Well, who went through them?

 

[Wood]:  He [the State] asked me where else they got
the cardsCor the numbers, and I
said out of dumpsters.  I don=t know.

 

. . . .

 

[Defense]:  Well, who got them out of dumpsters?

 

[Wood]:  I don=t know. 
I mean, all I know is that they had them at his house, at Maniac=s [Webster=s] house, you know,
and that those were numbers being used also. 
I don=t know who got them
out of the dumpsters.

 

. . . .

 

[Defense]:  So you never knew if [Richardson] was going
through garbage bins and dumpsters retrieving identifying information.

 

[Wood]:  That=s where they got them from.  I don=t know who actually went and took them
out.  I mean, I wasn=t there.  I can=t say that.

 

. . . .

 

[Defense]:  All right. 
You said that [Richardson] would call credit card and debit card numbers
to verify the validity of stolen credit and debit card numbers.

 

[Wood]: 
Yes.

 

[Defense]: 
Were you there when he did that?

 

[Wood]:  Yes.

A.  Standard of Review








A
trial court=s
decision to admit evidence is reviewed under an abuse of discretion
standard.  Ellison v. State, 86
S.W.3d 226, 227 (Tex. Crim. App. 2002); Mitchell v. State, 931 S.W.2d
950, 953 (Tex. Crim. App. 1996).  The
reviewing court may reverse the trial court=s
decision only if the ruling is outside the zone of reasonable
disagreement.  Ford v. State, 919
S.W.2d 107, 115 (Tex. Crim. App. 1996); Montgomery v. State, 810 S.W.2d
372, 391 (Tex. Crim. App. 1991) (op. on reh=g).

B.  Applicable Law








Rule
404(b) embodies the established principle that a defendant is not to be tried
for collateral crimes or for being a criminal generally.  Tex. R. Evid. 404(b); Nobles v. State,
843 S.W.2d 503, 514 (Tex. Crim. App. 1992); Booker v. State, 103 S.W.3d
521, 530 (Tex. App.CFort Worth 2003, pet. ref=d).
Extraneous offenses are not admissible at the guilt‑innocence phase of
trial to prove that a defendant acted in conformity with his character by
committing the charged offense.  Tex. R.
Evid. 404(b); Booker, 103 S.W.3d at 529; Martin v. State, 42
S.W.3d 196, 199B200 n.2 (Tex. App.CFort
Worth 2001, pet. ref=d).  Evidence of other crimes or extraneous
misconduct, however, may be admissible to prove motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident.  Tex. R. Evid. 404(b); Booker, 103
S.W.3d at 529B30.  Such evidence may also be introduced to rebut
a defensive theory.  Powell v. State,
63 S.W.3d 435, 439B40 (Tex. Crim. App.
2001).  By raising a defensive theory,
the defendant opens the door for the State to offer rebuttal testimony
regarding an extraneous offense if the extraneous offense has common
characteristics with the offense for which the defendant was on trial.  See Bell v. State, 620 S.W.2d 116, 126
(Tex. Crim. App. 1980); Jones v. State, 119 S.W.3d 412, 421 (Tex. App.CFort
Worth 2003, no pet.).

C.  Analysis

Richardson
argues that Wood=s testimony Awas
being offered to prove that [Richardson] has the propensity to commit identity
theft with credit card numbers and for that purpose, the evidence is
inadmissible.@  In response, the State asserts that Wood=s
testimony Awas
admissible for the nonconformity purpose of rebutting [Richardson=s]
defensive theory.@

Richardson=s
defensive theory at trial was that (1) he had no knowledge of the identifying
information found in his car, (2) the identifying information did not belong to
him, and (3) the identifying information was in his car by mistake. During his
opening statement, Richardson denied possessing or using identifying
information, stating that he Awas
helping a co-employeeCfellow employee move at the
time.  He made the mistake of giving Gary
Webster a ride and moving these items [identifying information] out of a
storage shed.@  In his closing argument, Richardson argued
that Officer Hill Ajumped to the conclusion
that everybody in th[e] car knew about these items.@

He [Officer Hill] asked Mr. Richardson were
those his items I think at least on two occasions, maybe three, and Mr.
Richardson denied themCthat they were his
each time.








And
if Mr. Richardson knew about all these items, if he knew these items were
located in the driver=s seat, if he knew they were
in the gray plastic box, if he knew they were in the console, if he knew the
stuff was in the trunk, why in the heck would he consent to the search?

Upon comprehensive review of the record, we
hold that the trial court could have reasonably concluded that Wood=s testimony was not
offered for character conformity purposes, but instead was offered to rebut
Richardson=s defensive theory
that the identifying information was in his car by mistake and that he had no
knowledge of the identifying information. 
See Lemmons v. State, 75 S.W.3d 513, 522B23 (Tex. App.CSan Antonio 2002,
pet. ref=d) (explaining that
an extraneous robbery offense offered by State to show murder defendant was
aggressor in the past was relevant to rebut defendant=s self‑defense
claim).  Moreover, the trial court=s limiting
instruction shows that the trial court admitted the testimony for noncharacter
conformity purposesCthat is, to determine
Richardson=s knowledge of, and
intent to, commit the alleged offense.  See
Tex. R. Evid. 105(a) (providing for a limiting instruction when evidence is
admissible for one purpose but not admissible for another).  Therefore, the trial court did not abuse its
discretion by admitting Wood=s testimony as
rebuttal evidence to Richardson=s defensive theory.
Accordingly, we overrule Richardson=s third issue. 

 

VI. 
Grossly Disproportionate Sentence








In
his fourth issue, Richardson complains that the trial court abused its
discretion by imposing a grossly disproportionate sentence, which violated his
constitutional right to be free from cruel and unusual punishment.  In response, the State questions whether
Richardson preserved this issue for review and argues, in the alternative, that
Richardson=s
sentence is not so grossly disproportionate to his crimes as to constitute
cruel and unusual punishment. 

To
preserve error for appellate review, a defendant must make a timely, specific
objection and obtain a ruling from the trial court.  Tex. R. App. P. 33.1.  This requirement applies even to errors of
constitutional dimension, including those asserting that a sentence is cruel
and unusual.  Solis v. State, 945
S.W.2d 300, 301 (Tex. App.CHouston
[1st Dist.] 1997, pet. ref=d)
(cited by Jackson v. State, 989 S.W.2d 842, 844 n.3 (Tex. App.CTexarkana
1999, no pet.)); see also Henderson v. State, 962 S.W.2d 544, 558 (Tex.
Crim. App. 1997).  There is nothing in
the record indicating that Richardson objected to the sentence.  He did, however, timely file a motion for new
trial, complaining that his Asentence
violates his constitutional protection to be free from disproportionate
sentences.@

To
preserve an issue by motion for new trial, a defendant must present the motion
to the trial court.  Tex. R. App. P.
21.6.  The defendant cannot merely file
the motion for new trial, but must ensure that the trial court has actual
notice of the motion.  See Carranza v.
State, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998) (interpreting predecessor
rule, which is identical to 21.6). Actual notice may be shown by such things as
the judge=s
signature or notation on a proposed order or by a hearing date set on the
docket.  Id.








There
is no presentment of the motion shown in this record.  There is no entry on the trial court=s
docket sheet regarding the motion for new trial, no hearing was set or held,
there is no signature by the judge on the motion, and there is no indication in
the record that the trial court had actual knowledge that the motion for new
trial was filed.  Thus, Richardson has
failed to preserve his claim regarding the alleged disproportionate sentencing
for our review.  See Thompson v. State,
243 S.W.3d 774, 776 (Tex. App.CFort
Worth 2007, pet. ref=d) (holding appellant
forfeited his complaint regarding his post‑adjudication sentence because
he did not object at trial or present his motion for new trial).  Accordingly, we overrule his fourth issue.

VII. 
Conclusion

Having
overruled all four of Richardson=s
issues, we affirm the trial court=s
judgment.

 

 

PER
CURIAM

 

PANEL:  MCCOY and WALKER, JJ.; and DIXON J. HOLMAN
(Senior Justice, Retired, Sitting by Assignment).

 

PUBLISH

 

DELIVERED:  August 12, 2010











[1]While reviewing
courts previously referred to the necessary connection between an accused and
contraband as Aaffirmative links,@ we now refer to
these connections simply as Alinks.@  See Evans, 202 S.W.3d at 161 n.9.





[2]Dumpster diving was
defined at trial as searching through trash cans for identifying information.