02-10-059-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00059-CR

 

 


 
 
 Larry Kevin Bonner
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

------------

FROM THE 432nd
District Court OF Tarrant COUNTY

------------

MEMORANDUM
OPINION[1]

------------

I.  Introduction

          Appellant
Larry Kevin Bonner appeals his conviction for three counts of aggravated
robbery with a firearm.  In three issues, Bonner contends that the trial court
abused its discretion by not allowing him to question a State’s witness
regarding the witness’s prior conviction for possession of marijuana and
deferred adjudication regarding the delivery of a controlled substance; that
the trial court erred by not granting a mistrial at the punishment phase after
the trial court sustained his objection to one of the prosecutor’s closing
remarks; and that he received ineffective assistance at trial.  We will affirm.

II.  Background

          Tamika
Jones and her husband were loading their car for a trip on the morning of April
18, 2008.  Jones observed a silver Monte Carlo quickly pull into her neighbor’s
driveway across the street—Curtis Bailey’s driveway.  Three men dressed in
black with bandana-covered faces jumped out of the car, went to the door of
Bailey’s home, banged on the door, and yelled that they were the police. 
Frightened, Jones told her husband to close the garage door.  She then went
upstairs and watched Bailey’s home from an upstairs window as she called 911. 
Jones observed the three men kick in the door.  Next, Jones heard five or six
gunshots.  She then saw the three men run outside, get back in the car, and
drive away.  Jones recalled that Bailey, “came out of his house, and he was all
bloody and he had been shot.”

Bailey
testified that he was home sleeping that morning.  Bailey’s girlfriend, Angel
Chapman, was with him in the bedroom, and Bailey’s cousin—Kevin Johnson—and Johnson’s
son were in the front of the house.  Bailey said that he heard banging on the
front door and yells of “task force.”  Next, Bailey heard Johnson say, “Let my
son go.”  Bailey also heard an unknown person demand, “Where is the money?” 
Bailey said that at that time he knew the intruders were not the police: “[W]hen
I heard them say where is the money, I knew it wasn’t the police.”  Bailey next
heard Johnson yell, “My mom and dad [are] in their room.  Please don’t kill
them.  There’s some money on top of the dresser.”

Bailey
said that he knew this was Johnson’s cryptic way of warning him.  Bailey
recalled that he told Chapman “to go to the restroom and call 911” and then
someone “knocked on the door, was trying to come through the door, and I
started shooting rapidly.”  The intruders shot back, and Bailey was shot.

Bailey
said, “It just got quiet all of a sudden.”  At that point, Bailey left his
bedroom and looked for Johnson and Johnson’s son, but they were no longer in
the house.  Bailey continued his search outside when Jones and her husband came
over to help him.  Emergency personnel took Bailey to the hospital.  Bailey
admitted that he initially lied to police about owning and firing his gun and,
because he feared Johnson had a warrant out for his arrest, he told police that
Johnson’s name was Clarence.  Bailey said he never saw the perpetrators’ faces.

The
prosecutor asked Bailey if he ran a snow cone stand.  Bailey said that he ran a
snow cone stand and did lawn work.  Bailey testified that he did not know why
the perpetrators chose his house.  On cross-examination, defense counsel asked
whether Bailey had ever had any other occupations besides running the snow cone
stand and his lawn business.  Bailey answered no.  Defense counsel then asked
to approach the bench.  The trial court then asked the jury to step out of the
courtroom.

Defense
counsel stated that he wanted to impeach Bailey’s testimony.  Defense counsel’s
argument was that he should be allowed to introduce evidence admitted in a
prior case where Bailey received deferred adjudication in a delivery of a controlled
substance charge.  Specifically, defense counsel contended that Bailey’s prior
admission for delivering a controlled substance was an inconsistent statement
with his testimony that he had never held any other occupations besides the two
testified to.  The trial court sustained the State’s objection.

Defense
counsel then took Bailey on voir dire, where Bailey confirmed that he did
judicially admit to delivery of a controlled substance in 1997.  Defense
counsel then asked the court for a ruling regarding his desire to address, in
front of the jury, an outstanding warrant that Bailey had at the time of
trial.  The warrant was in relation to an unpaid fine regarding a prior
conviction Bailey had for possession of marijuana.  The trial court ruled that defense
counsel could not introduce evidence of the marijuana conviction or the warrant
because the conviction was indeed a past final conviction that is neither a
felony nor a crime of moral turpitude.

Chapman
testified that she and Bailey were in the bedroom that morning when she heard a
loud noise.  She said that she heard men yelling “police” but warned Bailey
that she did not believe it was the police and advised Bailey to get his gun. 
She went into the bathroom to call the police, and then she heard gunshots. 
Bailey came into the bathroom, saying that he had been shot, and Chapman
noticed a hole in his shirt and blood.

Johnson
testified that he and his son had spent the prior evening at Bailey’s house. 
The next morning, Johnson heard banging on the front door and saw three guys burst
into the house, yelling that they were part of a task force and ordering
everyone to the ground.  Johnson’s three-year-old son was sitting at the table
eating cereal.  Johnson initially thought that the men were coming to arrest
him, but then Johnson noticed that the men were not police because of their
attire.  At that time, one of the men, who was unmasked, pointed a gun at
Johnson and demanded to know where the money was.  Johnson replied he didn’t
have any money.  While pointing the gun toward the three-year-old’s head, the
gunman, whom Johnson later identified as Bonner, told Johnson that if he did
not tell him where the money was, he was going to “blow” the “noodles and
cereal out of” the child’s head.

          Johnson
explained that in order to free his son from Bonner’s grasp, he told Bonner
that his “mom and daddy” had money with them in the bedroom.  As one of the
other intruders went down the hall to the bedroom, Johnson heard gunshots. 
Johnson grabbed his son and ran out the back door.  Once the police arrived, Johnson
returned to Bailey’s home.  But, because he had a warrant out for his arrest,
Johnson told the police his name was “Clarence.”  Once the police determined
who he was, they arrested him.

          Ryan
Aust, a paramedic at Harris Southwest Hospital, testified that he was working
that morning when Bonner told him that his friend had been shot and needed his
help.  Aust took a wheelchair to an injured man in the passenger seat of Bonner’s
car.  The man was bloodied, unconscious, and barely breathing.  The man, later
identified as Edward Robinson, died a short time later.  Dr. Gary L. Sisler,
who performed the autopsy on Robinson, said that Robinson had been shot in the
right side of his chest and that his death was a homicide.

          Officer
Timothy Hennessy, a patrol officer for North Richland Hills, said that he was
at the hospital with his wife when he saw Bonner get out of a silver Monte
Carlo and call out for help.  Hennessy saw an unconscious man in the right
front passenger seat, and Hennessy questioned Bonner about what had
transpired.  According to Hennessy, Bonner told him that the injured passenger
had been shot at a park.  Hennessy asked Bonner whose car it was, and Bonner
responded that he did not know who owned the car, which Hennessy noticed had a
buyer’s tag on it.  Hennessy patted Bonner down and took the car keys from
him.  Hennessy instructed Bonner to sit on the curb, but Bonner jumped up and
started to run away.  Hennessy pursued him, eventually restraining him until
other officers arrived.

          Fort
Worth police officer Robert Hill said that he impounded the Monte Carlo.  Hill
and another officer found a spent bullet outside the entrance to the ER.  The
bullet matched Bailey’s gun.  Police also found blood in the Monte Carlo and
Bonner’s wallet.  Detective Brent Johnson of the Fort Worth homicide unit
testified that he interviewed Bonner on the day of the shooting.  Bonner told
Johnson that Robinson had been shot in a park while the two of them were
talking to some girls.  Johnson also testified that he investigated Bonner for
felony murder because of the manner and circumstances surrounding Robinson’s
death.

          The
jury returned a verdict of guilty, and the trial proceeded to the punishment
phase.  During closing arguments at the punishment phase, the following
exchange occurred:

[Prosecutor]:  Whatever
[Bonner] was learning [where he grew up] just made his offense become more and
more severe, and lastly, as violent as it can get, one step away from murder. 
And we heard the definition of murder was met in this case.  Because in a
violent crime, a commission of that intent with that gun in his hand, Edward
Robinson was killed.  So it was murder.

 

[Defense Counsel]:   Your
Honor, object to that. The DA's office specifically declined to prosecute him
for murder.

 

[Trial Court]:   Sustained.

 

[Defense Counsel]:   We
ask that the jury be instructed to disregard.

 

[Trial Court]:   Disregard.

 

[Defense Counsel]:   And
we respectfully ask for a mistrial.

 

[Trial Court]:   Denied.

 

          After
both parties closed, the jury found true a repeat offender paragraph and
assessed punishment at thirty-three years’ confinement on each count.  The
trial court entered judgment accordingly with Bonner’s sentences to run
concurrently, and this appeal followed.

III.  Discussion

A.      The
Trial Court’s Disallowing Testimony Regarding Bailey’s Prior Conviction and
Deferred Adjudication

 

          In
part of his first issue, Bonner contends that the trial court erred by not
allowing him to question Bailey about a 1997 charge for delivery of a
controlled substance.  Specifically, Bonner contends that Bailey was
inconsistent about how he earned money.  The gist of Bonner’s issue is that
when Bailey testified that he earned a living by running a landscaping business
and a snow cone stand only, it was inconsistent with Bailey having previously judicially
admitting to delivery of a controlled substance in exchange for deferred
adjudication.  And, according to Bonner, delivery of a controlled substance
necessarily implies that Bailey earned money selling illegal drugs.  Thus,
Bonner contends that the trial court abused its discretion by not allowing him
to introduce evidence from the 1997 case—his judicial admission—as an
inconsistent statement.

As a
general rule, a party may impeach a witness with evidence of a prior
inconsistent statement if the party first presents the witness with the
existence of the statement, the details and circumstances surrounding the
statement, and an opportunity to explain or deny the statement.  Tex. R. Evid.
613(a).  Moreover, to be admissible as an inconsistent statement, the prior
statement must actually be inconsistent with the one given at trial.  Lopez
v. State, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002).  The trial court makes
the determination whether the statements are indeed inconsistent.  See id.;
see also United States v. Hale, 422 U.S. 171, 176, 95 S. Ct. 2133,
2140 (1975) (“As a preliminary matter, however, the court must be persuaded
that the statements are indeed inconsistent.”).  We review the trial court’s
exclusion of testimony under an abuse of discretion standard.  Salazar v.
State, 38 S.W.3d 141, 153–54 (Tex. Crim. App.), cert. denied, 534
U.S. 855 (2001).  As long as the trial court’s ruling is within the zone of reasonable
disagreement, we will not intercede.  Id.

Here,
Bonner took Bailey on voir dire outside the jury’s presence and Bailey
acknowledged that he had in fact previously pleaded guilty to delivery of a
controlled substance.  But the trial court was not persuaded by counsel’s
argument that Bailey’s prior judicial admission that he had delivered a
controlled substance was inconsistent with his testimony at trial that he had
only held the occupations of landscaper and snow-cone-stand operator.  See
Lopez, 86 S.W.3d at 230 (reasoning that trial court stands in position
to determine whether a prior statement is inconsistent).  Indeed, during voir
dire, Bonner did not inquire of Bailey any information regarding whether he had
ever made money delivering a controlled substance, whether he considered it an
occupation, or the circumstances surrounding the previous charge.  Furthermore,
it certainly falls within the zone of reasonable disagreement whether having
delivered a controlled substance is an “occupation” creating an inconsistency
with Bailey’s testimony that he had only ever held the two occupations he
testified to.  We hold that the trial court did not abuse its discretion by
determining that the 1997 judicial admission was not inconsistent and excluding
it, and we overrule this portion of Bonner’s first issue.  See id.

In
part of his first issue, Bonner argues that the trial court erred by not
allowing him to impeach Bailey through introduction of evidence regarding the
prior delivery offense “because it showed that Bailey was given deferred
adjudication and may be testifying favorable for the State because he was
treated favorably at the prior setting.”  Citing Maxwell v. State,
Bonner contends that an appellant “must be allowed to question a witness regarding
any possible favoritism based on the granting of a deferred adjudication.”  48
S.W.3d 196, 200 (Tex. Crim. App. 2001), overruled to the extent it conflicts
with Carpenter v. State, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998), by
Irby v. State, 327 S.W.3d 138 (Tex. Crim. App. 2010), cert. denied,
131 S. Ct. 904 (2011).

Impeachment
based on proof of circumstances showing bias is permitted unless the probative
value of the evidence is substantially outweighed by the danger of unfair
prejudice.  See Tex. R. Evid. 403, 613; see also Davis v. Alaska,
415 U.S. 308, 316, 94 S. Ct. 1105, 1110 (1974) (reasoning that right to
confront witnesses includes right to cross-examine witnesses concerning their
possible bias, self-interest, or motives in testifying); Hammer v. State,
296 S.W.3d 555, 561 (Tex. Crim. App. 2009).  But the proponent of the
impeachment evidence must establish some causal connection or logical
relationship between the pending charges and the witness’s vulnerable
relationship or potential bias or prejudice for the State, or testimony at
trial.  Carpenter, 979 S.W.2d at 634.

There
are a number of flaws in Bonner’s argument.  First, the court of criminal appeals
has overruled Maxwell to the extent that it stands for the proposition
that a proponent of impeachment may impeach any witness serving deferred
adjudication even when there is no evidence of potential bias or prejudice for
the State.  Irby, 327 S.W.3d at 152.  Second, impeachment of a witness
serving deferred adjudication based on potential favoritism toward the State
contemplates that the witness is currently on deferred adjudication.  See id.
at 148–51 (citing Carpenter and stating that the proponent must establish some
causal connection or logical relationship between the pending charges). 
In this case, Bailey’s admission regarding delivery of a controlled substance
stemmed from charges in 1997, and at the time of Bonner’s trial, Bailey had
already served his deferred adjudication and the case had been dismissed. 
Finally, even under Irby, Bonner, as the proponent of the impeachment
evidence, failed to establish any causal connection or logical relationship
between the 1997 charge and Bailey’s testimony at trial.  See id. at 148
(“There must be some logical connection between that ‘vulnerable relationship’
and the witness’s potential motive for testifying as he does.”).  We overrule
this portion of Bonner’s first issue.

          In
the remainder of his first issue, Bonner contends that the trial court abused its
discretion by not allowing him to elicit testimony from Bailey regarding an
outstanding warrant in relation to unpaid fines regarding a prior conviction
for possession of marijuana.  Bonner contends that the warrant is a “pending
criminal case” against Bailey, and that thus he automatically should have been
allowed to question Bailey “regarding any benefit received by Bailey regarding
that warrant in exchange for his testimony.”

          Bonner
relies on the court of criminal appeals’s decision in Miller v. State for
the proposition that when a witness for the State has pending criminal charges
or is awaiting sentencing, evidence of this fact is always admissible to show a
possible motive for testifying on behalf of the State.  741 S.W.2d 382, 389
(Tex. Crim. App. 1987), cert. denied, 486 U.S. 1061 (1988).  The policy
behind the rule in Miller is “possible motives for fabrication due to
charges pending against the State’s witnesses.”  Simmons v. State, 548
S.W.2d 386, 391 (Tex. Crim. App. 1977).  But Bonner’s reliance on Miller
is misplaced.  Despite Bonner’s characterization to the contrary, the capias
pro fine warrant issued against Bailey that was outstanding at the time of
Bonner’s trial is not a “pending criminal charge.”  As the trial court noted,
the warrant was issued in response to Bailey’s alleged failure to pay a fine in
relation to a prior conviction for marijuana that had already been “disposed”
at the time of trial.  See Tex. Code Crim. Proc. Ann. art. 43.015 (West
2010) (stating that a capias pro fine is a writ “issued by a court
having jurisdiction of a case after judgment and sentence”) (emphasis
added).  The trial court further informed Bonner at trial that as a past
conviction for possession of marijuana, Bailey’s conviction was not admissible
for impeachment purposes because it was neither a felony nor a crime involving
moral turpitude.  See Tex. R. Evid. 608(b), 609(a); see also Bell v.
State, 620 S.W.2d 116, 121 (Tex. Crim. App. [Panel Op.] 1980) (reasoning
that misdemeanor marijuana possession does not involve moral turpitude).  We
conclude that the trial court did not abuse its discretion by excluding
testimony regarding Bailey’s outstanding warrant.  We overrule the remainder of
Bonner’s first issue.

          B.      Trial
Court’s Denial of Bonner’s Motion for Mistrial

          In
his second issue, Bonner contends that the trial court abused its discretion
when it denied his request for a new trial.  At the punishment phase closing
arguments, the prosecutor argued, “And we heard the definition of murder was
met in this case.  Because in a violent crime, a commission of that intent with
that gun in his hand, [Robinson] was killed.  So it was murder.”  Defense
counsel objected.  The trial court sustained the objection.  Defense counsel
then asked for an instruction to the jury to disregard the prosecutor’s
statement.  The trial court instructed the jury to disregard the statement. 
Defense counsel then moved for a mistrial, which the trial court denied.

According
to Bonner, the prosecutor’s statement was so egregious that Bonner is entitled
to a new trial on punishment.  The State counters that it introduced evidence
of the extraneous offense of felony murder at the punishment phase and showed
beyond a reasonable doubt that Bonner committed felony murder.  Thus, the State
argues that the statement was not improper at all but reflective of a proven
extraneous offense.  See Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1)
(West Supp. 2010).  We will assume without deciding that the prosecutor’s
argument was improper.  We conclude, however, that the trial court cured any
potential error and did not otherwise abuse its discretion by denying Bonner’s
motion for mistrial.

Because
the trial court sustained Bonner’s objection and instructed the jury to disregard
the argument, “[t]he only adverse ruling—and thus the only occasion for making
a mistake—was the trial court’s denial of the motion for mistrial.”  Hawkins
v. State, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004).  We review the trial
court’s denial of a motion for mistrial under an abuse of discretion standard. Russeau
v. State, 171 S.W.3d 871, 885 (Tex. Crim. App. 2005), cert. denied,
548 U.S. 926 (2006); Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App.
1999), cert. denied, 529 U.S. 1070 (2000). The determination of whether
a given error necessitates a mistrial must be made by examining the particular
facts of the case.  Ladd, 3 S.W.3d at 567; Hernandez v. State,
805 S.W.2d 409, 414 (Tex. Crim. App. 1990), cert. denied, 500 U.S. 960
(1991).  A motion for mistrial will be granted only in “extreme circumstances,
where the prejudice is incurable.”  Hawkins, 135 S.W.3d at 77; see
Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).  Generally, a
prompt instruction to disregard an inadmissible statement will cure error.  Ovalle
v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000).

To
evaluate whether the trial court abused its discretion by denying a mistrial
for improper jury argument, the court of criminal appeals, in Hawkins,
adopted the three factors from Mosley v. State, which balance:  (1) the
severity of the misconduct (the magnitude of the prejudicial effect of the
prosecutor’s remarks), (2) the measures adopted to cure the misconduct
(the efficacy of any cautionary instruction by the judge), and (3) the
certainty of conviction absent the misconduct (the strength of the evidence
supporting the conviction).  Hawkins, 135 S.W.3d at 77 (citing Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)).

Further,
we are to presume the jury will follow the court’s instructions.  Colburn v.
State, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).  In considering whether
an instruction is sufficient to cure error, courts consider whether the
reference was direct or implied, intentional or inadvertent, detailed or vague,
and whether the topic was pursued once the instruction was given.  Kipp v.
State, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994); Waldo v. State,
746 S.W.2d 750, 752 (Tex. Crim. App. 1988).

In
this case, concerning the first Mosley factor, because the alleged
improper argument was embedded within other remarks that invited the jury to
draw a legitimate inference from evidence presented at the witness stand, the
magnitude of the argument was severely diminished.  We conclude that the extent
of potential prejudice was not so great here as necessarily to render a firm
and timely curative instruction inefficacious.  To that end, and concerning the
second Mosley factor, the trial court promptly instructed the jury to
disregard the complained-of statement, and we presume that the jury followed
that instruction.  See Colburn, 966 S.W.2d at 520.

Furthermore,
after the trial court instructed the jury to disregard the statement, the State
did not refer to it again, did not attempt to highlight it, and did not make any
use of it at all.  Additionally, in the trial court’s charge to the jury on
punishment, the jury was instructed that “You are charged that it is only from
the witness stand that the jury is permitted to receive evidence regarding the
case.”  We presume the jury followed this instruction as well.  See
generally Resendiz v. State, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003) (citing
Colburn, 966 S.W.2d at 520).  Nothing in the record suggests the jury
disregarded either of the trial court’s instructions.

Lastly,
under Mosley, because this argument occurred at punishment, we analyze
the third factor with regard to the certainty of the punishment assessed.  See
Archie v. State, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007) (analyzing Mosley
factors at punishment phase).  The evidence against Bonner in this case is
substantial both regarding the instant offense and Bonner’s previous criminal
history.  Multiple eyewitnesses testified to Bonner’s involvement in the home
invasion.  One witness identified Bonner as the assailant who put a gun to a
three-year-old’s head, threatening to blow the cereal out of the child’s
mouth.  Hennessy, the officer at the hospital where Bonner managed to drop off
his fatally-wounded accomplice, testified that Bonner fled after being patted
down at the hospital.  Investigators also matched a bullet found near Bonner’s
vehicle at the hospital to Bailey’s gun.  In addition, they tied his deceased
accomplice, whom Bonner did drop off at the hospital, to the home invasion.

The
State introduced evidence of Bonner’s multiple prior convictions for delivery
of a controlled substance, assault with bodily injury to a family member,
fleeing a police officer, evading arrest, and failure to identify himself as a
fugitive.  Moreover, the jury assessed punishment at thirty-three years’
confinement on a first degree felony, which carried with it a potential maximum
of life in prison.  See Tex. Penal Code Ann. §§ 12.32(a) (stating
that the punishment range for first-degree felonies is “for life or for any term
of not more than 99 years or less than 5 years”), 29.03(b) (providing that,
upon conviction for the offense of aggravated robbery, a defendant is subject
to the punishment range corresponding to first-degree felonies) (West 2011).

In
our view, due to the strength of the State’s punishment case, it is likely that
the same punishment would have been assessed regardless of the prosecutor’s
alleged improper comment during closing argument of the punishment phase. 
Thus, we overrule Bonner’s third issue.

          C.      Effective
Assistance of Counsel

          In
his third issue, Bonner contends that he received ineffective assistance of
counsel at trial.  Specifically, Bonner contends that his counsel failed to
adequately prepare for trial by failing to “investigat[e] and locat[e]”
witnesses on his behalf.

          To
establish ineffective assistance of counsel, appellant must show by a
preponderance of the evidence that his counsel’s representation fell
below the standard of prevailing professional norms and that there is a
reasonable probability that, but for counsel’s deficiency, the result of the
trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163
S.W.3d 734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59,
62–63 (Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d 808,
812 (Tex. Crim. App. 1999).

          In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable
under all the circumstances and prevailing professional norms at the time of
the alleged error.  See Strickland, 466 U.S. at 688–89, 104 S. Ct.
at 2065.  Review of counsel’s representation is highly deferential, and the
reviewing court indulges a strong presumption that counsel’s conduct fell
within a wide range of reasonable representation.  Salinas, 163 S.W.3d
at 740; Mallett, 65 S.W.3d at 63.

A
reviewing court will rarely be in a position on direct appeal to fairly
evaluate the merits of an ineffective assistance claim.  Salinas, 163
S.W.3d at 740; Thompson, 9 S.W.3d at 813–14.  “In the majority of cases,
the record on direct appeal is undeveloped and cannot adequately reflect the
motives behind trial counsel’s actions.”  Salinas, 163 S.W.3d at 740
(quoting Mallett, 65 S.W.3d at 63).  To overcome the presumption of
reasonable professional assistance, “any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.”  Id. (quoting Thompson, 9 S.W.3d at
813).  It is not appropriate for an appellate court to simply infer ineffective
assistance based upon unclear portions of the record.  Mata v. State,
226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

          The
second prong of Strickland requires a showing that counsel’s errors were
so serious that they deprived the defendant of a fair trial, i.e., a trial with
a reliable result.  Strickland, 466 U.S. at 687, 104 S. Ct.
at 2064.  In other words, appellant must show there is a reasonable probability
that, but for counsel’s unprofessional errors, the result of the proceeding
would have been different.  Id. at 694, 104 S. Ct. at 2068.  A
reasonable probability is a probability sufficient to undermine confidence in
the outcome.  Id.  The ultimate focus of our inquiry must be on the
fundamental fairness of the proceeding in which the result is being
challenged.  Id. at 697, 104 S. Ct. at 2070.

This
case demonstrates the “inadequacies inherent in evaluating ineffective
assistance claims on direct appeal.”  Patterson v. State, 46 S.W.3d 294,
306 (Tex. App.—Fort Worth 2001, no pet.).  Bonner did not file a motion for new
trial to afford the trial court a chance to hold a hearing and inquire into the
reasons for trial counsel’s alleged acts or omissions, or the extent to which
counsel investigated Bonner’s case, or the efforts he engaged in to locate
witnesses to testify on Bonner’s behalf.  Given the record before us, there is
nothing to rebut the presumption of reasonably effective assistance of counsel,
and we will not speculate to the contrary.  See Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994).  Because Bonner has failed to meet the
first prong of Strickland, we overrule his third issue.

IV.  Conclusion

          Having
overruled all three of Bonner’s issues, we affirm the trial court’s judgments.

 

 

BILL MEIER
JUSTICE

 

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED: 
August 25, 2011









[1]See Tex. R. App. P. 47.4.